1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PETER J. MANCUS,

11            Petitioner,              No. CIV S-06-0079 GEB GGH P

12        vs.

13   JIM POPE, et al.,                 ORDER and

14            Respondents.             FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17            Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant

18   to 28 U.S.C. § 2254.  Petitioner challenges his April 2003 conviction for a misdemeanor, a

19   violation of Cal. Penal Code § 148(a) (resisting an officer).  Petitioner was sentenced to ten days

20   in jail and placed on formal probation for three years.  RT 877-878.  Petitioner was also fined

21   $370.  RT at 878.  The petition contains 35 grounds for relief.

22            After carefully reviewing the record, the court recommends that the petition be

23   denied.  Because of the frivolous nature of the petition, for the most part, petitioner is ordered to

24   show cause why he should not be sanctioned $2,500.00.

25   \\\\\

26   \\\\\

1

1    II.  Anti-Terrorism and Effective Death Penalty Act (AEDPA)

2            The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this

3    petition for habeas corpus which was filed after the AEDPA became effective.  Neelley v. Nagle,

4    138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059 (1997).  The

5    AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential

6    standards of review to be used by a federal habeas court in assessing a state court's adjudication

7    of a criminal defendant's claims of constitutional error.  Moore v. Calderon, 108 F.3d 261, 263

8    (9th Cir. 1997).

9            In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

10   Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

11   for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

12   between "contrary to" clearly established law as enunciated by the Supreme Court, and an

13   "unreasonable application of" that law.  Id. at 1519.  "Contrary to" clearly established law applies

14   to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

15   Court on a point of law, or (2) if the state court case is materially indistinguishable from a

16   Supreme Court case, i.e., on point factually, yet the legal result is opposite.

17           "Unreasonable application" of established law, on the other hand, applies to

18   mixed questions of law and fact, that is, the application of law to fact where there are no factually

19   on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

20   Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

21   AEDPA standard of review which directs deference to be paid to state court decisions.  While the

22   deference is not blindly automatic, "the most important point is that an *unreasonable* application

23   of federal law is different from an incorrect application of law....[A] federal habeas court may not

24   issue the writ simply because that court concludes in its independent judgment that the relevant

25   state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

26   that application must also be unreasonable."  Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

2

1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue.  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Petitioner filed an opening brief on appeal in the Appellate Division of the Superior Court of Shasta County on December 19, 2003.  Respondent's Lodged Document No. 1.  On November 15, 2004, the Appellate Division of the Superior Court of Shasta County affirmed the judgment.  Respondent's Lodged Document No. 2.  On February 22, 2005, petitioner filed a habeas corpus petition in the California Supreme Court.  Respondent's Lodged Document No. 3.  On March 16, 2005, the California Supreme Court denied the petition without comment.  Respondent's Lodged Document No. 4.  Accordingly, the court independently reviews the record to determine whether the denial of petitioner's claims by the California

1  Supreme Court was an unreasonable application of clearly established Supreme Court authority.

2  III.  Background

3          The decision by the Shasta County Superior Court affirming petitioner's

4  conviction contains a factual summary of the offense.  After independently reviewing the record,

5  the court finds the summary to be accurate and adopts it below:

6          On May 4, 2002, the Redding Exchange Club sponsored an air
           show at the Redding Municipal Airport.  Entry was paid by
7          admission and through a controlled admission or entry gate.  Signs
           were posted along the approach way and the main gate notifying
8          attendees that bags, containers, ice chests, etc., would be subject to
           search.  Any individual not wishing to have his or her bags
9          searched could return the bags to his or her vehicle and enter
           without a search of the containers.

10
           Defendant Mancus attempted to enter the gate pulling a large
11         rolling suitcase with a second bag wrapped to the top of the rolling
           suitcase.  He was stopped by a volunteer of the Sheriff's Office
12         who asked him to open the bags so that the volunteer could look
           inside.  The defendant refused saying: "I am not the enemy.  Since
13         9-11, I have been treated like this, and I am not the enemy.  The
           enemy is in New York and I am not the enemy.  So therefore, I am
14         not going to let you search my bags" After a brief conversation,
           and a lecture by the defendant, a lawyer, concerning the
15         Constitution and the Fourth Amendment, the defendant passed the
           volunteer and continued through the gate.
16
           The volunteer requested assistance from Redding Police Officer
17         Scott Mayberry.  Mayberry, unaware of what had transpired,
           stepped in the defendant's path and requested him to stop.  The
18         defendant asked Mayberry: "Do you have probable cause to stop
           me?"  Mayberry responded that he was going to stop the defendant
19         until he found out what was going on.  The defendant responded,
           "You're not searching my bags.  They want to search my bags."
20
           The officer explained to the defendant that as a result of safety
21         concerns arising from September 11, 2001, he needed to search the
           bags before the defendant could enter the air show.  Defendant was
22         advised that if he did not wish to have his bags examined, he could
           return his bags to his vehicle and then enter.
23
           After another lecture by the defendant on the Constitution and the
24         Fourth Amendment, Mayberry requested the assistance of his
           sergeant.  At that time Mayberry asked the defendant to step aside
25         so they could talk further, however the defendant refused.  At this
           point, defendant raised his left arm as though he were going to
26         brush past Mayberry to advance through the gate or assault the

1    officer or push the officer out of the way.  Mayberry testified that
     he was unclear as to the intentions of the defendant but that he
2    immediately reacted by grabbing the defendant by the wrist and
     putting the defendant in a wrist lock.  Defendant continued the
3    struggle so Mayberry pushed him to the ground, handcuffed and
     arrested him.  A search incident to the arrest was conducted on the
4    defendant's suitcases and nothing more than camera equipment
     was discovered.
5

6    Respondent's Lodged Document No. 2., pp. 1-2.

7    IV.  Analysis

8         Claims 1 and 2

9         Claim 1 is titled, "The State's Chain of Constitutional Authority is Broken."  This

10   claim, at page 15-63 of the petition, contains several sub-parts alleging various violations of the

11   Fourth Amendment.  In essence, petitioner is arguing that the administrative search policy, on

12   which his search was based, violated the Fourth Amendment.

13        A Fourth Amendment claim is not cognizable in federal habeas proceedings if a

14   petitioner has had a full and fair opportunity to litigate the claim in state court.  Stone v. Powell,

15   428 U.S. 465, 481-82, 96 S. Ct. 3037, 3046-47 (1976).  The relevant inquiry is whether petitioner

16   had the opportunity to litigate his claim, not whether he did in fact do so or even whether the

17   claim was correctly decided.  Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996).

18        Petitioner had the opportunity to litigate his Fourth Amendment claim.  In his

19   habeas petition filed in the California Supreme Court, petitioner states that his trial counsel filed

20   a motion to suppress which the trial court then denied.  Respondent's Lodged Document no. 3, p.

21   62.  Although this court does not possess the pleadings filed regarding this motion, the fact that

22   petitioner's counsel filed a motion to suppress demonstrates that petitioner had the opportunity to

23   litigate his Fourth Amendment claims.

24        In claim 2 petitioner argues that his Fourth Amendment claims are not barred

25   because the prosecutor told the judge that the jury, rather than the judge, should decide the

26   legality of the officer's conduct, and that the judge denied the motion to suppress without stating

a reason.  Petition, p. 63.  As stated above, the relevant inquiry is whether petitioner had the opportunity to litigate his Fourth Amendment claims, not whether the claims were correctly decided.  81 F.3d at 899.

Petitioner also argues that his trial counsel incompetently failed to present petitioner's Fourth Amendment claims to the judge and the jury in violation of his Sixth Amendment right to the effective assistance of counsel.  Petition, p. 64.  Other than this conclusory allegation, petitioner does not describe in any detail how his counsel was ineffective in presenting his Fourth Amendment claims.  For this reason, the court finds that petitioner's ineffective assistance of counsel claim is without merit.  James v. Borg, 24 F.3d 20, 26 (9th Cir 1994) ("conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

After independently reviewing the record, the court finds that the denial of these claims by the California Supreme Court was not an unreasonable application of clearly established Supreme Court authority.  Claims 1 and 2 should be denied.

Claim 3

Claim 3 alleges that petitioner cannot be guilty of violating Cal. Penal Code § 148 because government officials created uncertainty.  Petition, p. 65.  In particular, petitioner alleges that the Redding Police Department created uncertainty about the constitutionality of their search policy by concocting a policy that was contrary to controlling law.

Respondent has interpreted claim 3 to state a claim alleging insufficient evidence to support the conviction.  However, the claim is directed to an alleged violation of the Fourth Amendment.  Nevertheless, the court will analyze both possible claims.  The court has previously discussed the unavailability of a Fourth Amendment claim in habeas corpus and will turn to the insufficiency of evidence claim.

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light

most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).  Under Jackson, the court reviews the entire record when the sufficiency of the evidence is challenged on habeas.  Adamson v. Ricketts, 758 F.2d 441, 448 n. 11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts."  Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.  "The question is not whether we are personally convinced beyond a reasonable doubt.  It is whether rational jurors could have reached the same conclusion that these jurors reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).

If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction.  McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994).  The fact that petitioner can construct from the evidence alternative scenarios at odds with the verdict does not mean that the evidence was insufficient, i.e., that no reasonable trier of fact could have found the conviction scenario beyond a reasonable doubt.

> In reviewing the sufficiency of the evidence supporting a conviction, we search the record to determine "whether a reasonable jury, after viewing the evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt of each essential element of the crime charged."  United States v. Douglass, 780 F.2d 1472, 1476 (9th Cir.1986).  *The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict.*  United States v. Fleishman, 684 F.2d 1329, 1340 (9th Cir.), cert. denied, 459 U.S. 1044, 103 S. Ct. 464, 74 L. Ed.2d 614 (1982); United States v. Federico, 658 F.2d 1337, 1343 (9th Cir.1981), overruled on other grounds, United States v. De Bright, 730 F.2d 1255, 1259 (9th Cir.1984) (en banc).  United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991) (emphasis added).

U.S. v. Mares, 940 F.2d 455, 458 (9th Cir. 1991).

Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury

1    should have arrived at its conclusion, the federal court must also determine that the state

2    appellate court not have affirmed the verdict under the Jackson standard in the absence of an

3    unreasonable determination.  Juan H. v. Allen, 408 F.3d 1262 (9th Cir. 2005).

4            The legal elements of a violation of § 148(a) are: 1) the defendant willfully

5    resisted, delayed, or obstructed a peace officer, 2) when the officer was engaged in the

6    performance of his or her duties, and 3) the defendant knew or should have known that the other

7    person was a peace officer engaged in the performance of his or her duties.  In re Muhammed C.,

8    95 Cal. App. 4th 1325, 1329, 116 Cal. Rptr. 2d 21 (2002).

9            Petitioner's main argument is that Officer Mayberry was not engaging in the

10   lawful exercise of his duties when he ordered petitioner to allow him to search his bag and then

11   stopped him from entering the air show because Officer Mayberry did not have the legal

12   authority to require him to submit to this search.  In essence, petitioner is again arguing that the

13   administrative search policy on which Officer Mayberry relied violated the Fourth Amendment.

14   The jury did not decide the legality of the search policy.  RT at 783.  Rather, the jury was

15   instructed that the administrative search policy was lawful.  RT at 783.  Petitioner may not, by

16   way of a sufficiency of the evidence claim, litigate his Fourth Amendment challenge to the

17   administrative search policy.  Accordingly, the court will only consider whether there was

18   sufficient evidence to support petitioner's conviction based on the issues submitted to the jury.

19           Based on the evidence presented, a reasonable jury could have found that

20   petitioner willfully resisted Officer Mayberry's attempts to prevent him from entering the air

21   show without having his bags searched.  The jury was instructed that, as a matter of law, Officer

22   Mayberry was lawfully exercising his duties when he asked to search petitioner's bags.  Based on

23   the evidence presented, a reasonable jury could have found that Officer Mayberry detained

24   petitioner when it appeared that he was either going to strike him or proceed through the entry

25   gate without the search.  Based on the evidence presented, a reasonable jury could have found

26   that petitioner should have known that Officer Mayberry was engaged in the performance of his

1  duties.  For these reasons, the court finds that there was sufficient evidence to support

2  petitioner's conviction.

3        After independently reviewing the record, the court finds that the denial of this

4  claim by the California Supreme Court was not an unreasonable application of clearly established

5  Supreme Court authority.  Accordingly, this claim should be denied.

6        Claim 4

7        Claim 4 alleges that the prosecutor "memorialized evidence that petitioner is

8  innocent or that reasonable doubt about his guilt exists."  Petition, p. 67.  Petitioner argues that in

9  her closing argument, the prosecutor argued that she had reasonable doubt as to petitioner's

10  intent, thus acknowledging that there was insufficient evidence to support his conviction.  Id.

11  This claim is apparently further argument in support of petitioner's insufficiency of the evidence

12  claim.

13        Petitioner cites the following portion of the prosecutor's argument in support of

14  this claim:

15             Yet another reason, this motion that the defendant makes to get
             past him, to push him out of the way or making it very clear that if
16             he wasn't pushing him out of the way, he was going in to the air
             show.  Officer Mayberry showed us that motion.

17

18  RT at 806.

19        The prosecutor's argument above does not indicate that she had doubt regarding

20  petitioner's guilt.  Rather, the prosecutor argued that petitioner's conduct indicated that he

21  intended to go into the air show.  This prosecutor's argument does not support petitioner's

22  insufficiency of the evidence claim.

23        After independently reviewing the record, the court finds that the denial of this

24  claim by the California Supreme Court was not an unreasonable application of clearly established

25  Supreme Court authority.  Accordingly, this claim should be denied.

26  \\\\\

1    Claim 7

2    Claim 7 alleges that Cal. Penal Code § 148(a)(1) was applied unconstitutionally.

3  Petition, p. 69.  In particular, petitioner argues that his resistence to Officer Mayberry was

4  peaceful and verbal.  Id.  Petitioner argues that his conduct was protected by the First

5  Amendment.  Id.

6    It is true that the First Amendment protects verbal criticism, challenges and

7  profanity directed at police officers unless the speech is "'shown likely to produce a clear and

8  present danger of a serious substantive evil that rises far above, public inconvenience, annoyance

9  or unrest.'"  City v. Houston, Texas v. Hill, 482 U.S. 451, 461-63, 107 S. Ct. 2502, 2509-11

10  (1987) (quoting Terminiello v. Chicago, 337 U.S. 1, 4, 69, S. Ct. 894, 896 (1949)).  However, the

11  jury in this case clearly found that petitioner did more than talk to Officer Mayberry.  The jury

12  found that petitioner physically disobeyed Officer Mayberry's order to submit to a search before

13  entering the air show.  This conduct is not protected by the First Amendment.

14    The denial of this claim by the California Supreme Court was not an unreasonable

15  application of clearly established Supreme Court authority.

16    Claim 8

17    Claim 8 alleges that Cal. Penal Code § 148(a)(1) is unconstitutionally vague and

18  overbroad.  Petition, p. 77.  Where speech is not the explicit subject of a statute or regulation and

19  is not otherwise implicated in the case, and if related constitutional rights are not expressly

20  invoked in a challenge to facial validity, the court need only examine the vagueness challenge

21  under the facts of the particular case and decide whether, under a reasonable construction of the

22  statute or regulation, the conduct in question is prohibited.  U.S. v. Hogue, 752 F.2d 1503, 1504

23  (9th Cir. 1985).  Under these principles, the court does not address whether the prohibition before

24  us may be vague or overbroad in its other potential applications.  Id.  A criminal sanction is not

25  vague if it provides fair notice of the conduct proscribed.  Id.  A defendant is deemed to have fair

26  notice of an offense if a reasonable person of ordinary intelligence would understand that his or

10

1  her conduct is prohibited by the rule in question.  Id.

2        In contrast, facial vagueness challenges are appropriate if the statute clearly

3  implicates free speech rights.  Foti v. City of Menlo Park, 146 F.3d 629, 639 n. 10 (9th Cir.

4  1998); see also Roulette v. City of Seattle, 97 F.3d 300, 305 (9th Cir. 1996) (facial attack proper

5  if the challenged statute "is directed narrowly and specifically at expression or conduct

6  commonly associated with expression").

7        In the instant case, the court does not find that Cal. Penal Code § 148 clearly

8  implicates free speech rights or is narrowly and specifically directed at expression or conduct

9  commonly associated with expression.  Accordingly, the court considers whether a reasonable

10  person of ordinary intelligence would understand that the conduct engaged in by defendant, as

11  found by the jury, was prohibited by § 148.

12        As discussed above, the evidence at trial demonstrated that Officer Mayberry told

13  petitioner several times that he could not enter the air show without having his bags searched.

14  Petitioner then attempted to either push Officer Mayberry or push past him into the air show.

15  The court finds that a person of ordinary intelligence would have understood that engaging in this

16  conduct constituted a willful resistance to Officer Mayberry's attempt to lawfully discharge his

17  duty.  Accordingly, petitioner's vagueness challenge to Cal. Penal Code § 148 is without merit.

18        After independently reviewing the record, the court finds that the denial of this

19  claim by the California Supreme Court was not an unreasonable application of clearly established

20  Supreme Court authority.  Accordingly, this claim should be denied.

21             Claim 9

22        Claim 9 alleges that because the state cannot provide him with a sufficiently

23  complete record of his motion to suppress, his claims of constitutional error may be reviewed.

24  Petition, p. 87.  Because petitioner may not litigate his Fourth Amendment claim in federal court,

25  this claim is without merit.

26  \\\\\

11

1    After independently reviewing the record, the court finds that the denial of this

2  claim by the California Supreme Court was not an unreasonable application of clearly established

3  Supreme Court authority.  Accordingly, this claim should be denied.

4    Claim 10

5    Claim 10 alleges that the trial court's evidentiary decisions created an absence of

6  fundamental fairness that fatally infected the trial, which violated petitioner's right to a fair trial.

7  Petition, p. 87.  This discussion of this claim includes argument in support of petitioner's

8  prosecutorial misconduct claim.  The court disregard the prosecutorial misconduct argument

9  contained in claim 10 and address only those arguments concerning evidentiary decisions.

10    A writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis

11  of some transgression of federal law binding on the state courts.  Middleton v. Cupp, 768 F.2d

12  1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is

13  unavailable for alleged error in the interpretation or application of state law.  Middleton v. Cupp,

14  768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v.

15  Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state

16  issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377, 92 S. Ct. 2174, 2178 (1972).

17    The Supreme Court has reiterated the standards of review for a federal habeas

18  court.  Estelle v. McGuire, 502 U.S. 62, 112 S. Ct. 475 (1991).  In Estelle v. McGuire, the

19  Supreme Court reversed the decision of the Court of Appeals for the Ninth Circuit, which had

20  granted federal habeas relief.  The Court held that the Ninth Circuit erred in concluding that the

21  evidence was incorrectly admitted under state law since, "it is not the province of a federal

22  habeas court to reexamine state court determinations on state law questions."  Id. at 67-68, 112 S.

23  Ct. at 480.  The Court re-emphasized that "federal habeas corpus relief does not lie for error in

24  state law."  Id. at 67, 112 S. Ct. at 480, citing Lewis v. Jeffers, 497 U.S. 764, 110 S. Ct. 3092,

25  3102 (1990), and Pulley v. Harris, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75 (1984) (federal courts

26  may not grant habeas relief where the sole ground presented involves a perceived error of state

law, unless said error is so egregious as to amount to a violation of the Due Process or Equal Protection clauses of the Fourteenth Amendment).

The Supreme Court further noted that the standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)." Id. at 68, 112 S. Ct. at 480. The Court also stated that in order for error in the state trial proceedings to reach the level of a due process violation, the error had to be one involving "fundamental fairness," Id. at 73, 112 S. Ct. at 482, and that "we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" Id. at 73, 112 S. Ct. at 482. Habeas review does not lie in a claim that the state court erroneously allowed or excluded particular evidence according to state evidentiary rules. Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).

In subclaim A of claim 10, petitioner argues that the trial court improperly denied his motion in limine to exclude evidence that he had filed a Notice of Claim against Shasta County, the City of Redding and the officers involved in the incident. Petitioner had argued that his civil claim had no relevance to the criminal action. During the trial, the prosecutor asked petitioner about his civil lawsuit:

> Q: Sir, do you take that statement that you made twice to Officer Mayberry that you told us you made "cut your losses"–do you take that statement as a threat to sue?
>
> A: It could be. It could not be.
>
> Q: So when you told us a moment ago that it was a risk analysis and you were doing damage control, at the moment that you said that–what you meant by that, that it was risk analysis, damage control, at that moment when you explained that, did you think it was a threat to sue?
>
> A: I was thinking lots things. I wanted him to stop the damage he was doing to me and to honor my rights.
>
> Q: Was it a threat to sue?
>
> A: Potentially yes. The implication is certainly there. I'm not backing off from that, but at that point in time I wanted him to cut the losses for himself and for me to stop the hemorrhaging. Give me my gear, take the handcuffs off, so I can go do

13

an MA which is a military term for mission accomplished.  I wanted to photograph the planes.

Q: Okay.  So you told us it was potentially a threat to sue.  Now isn't it true that you have, in fact, since the Air Show, filed a notice of your intent to sue?  First of all, you filed a notice of your intent to sue the City of Redding, right?

A: Yes.  I did what the law requires me to do.

Q: The whole city, right?

A: Well, it's the city of Redding.

Q: And you have also filed notice of your intent to sue Shasta County, right?

A: Yes.  Because–yes.

Q: And also Herb Williams?

A: Yes.

Q: And all of Herb Williams' supervisors and all of his training officers, right?

A: Yes.

RT at 578-579.

The prosecutor later questioned petitioner again regarding his civil action.  See RT at 598-599.

Evidence that petitioner filed a civil action, or an administrative prelude to an action, regarding the incident that led to his arrest is not sufficiently relevant to the criminal action, either directly or on an impeachment basis.[1]  Nevertheless, the court does not find that the trial court's decision to allow the prosecution to question petitioner regarding his civil action violated fundamental fairness.  The *sine qua non* for finding an evidence error to involve fundamental fairness is that it must have substantially, improperly influenced the outcome of the verdict.  See Estelle, supra.  The evidence in this case was overwhelming that petitioner resisted

---

[1]  Theoretically, one could argue that a defendant who files a lawsuit may be tailoring his criminal testimony so as to not adversely affect a civil case.  However, the questions here were designed to show that petitioner was desirous of harassing those who had brought a criminal action against him.

the order of a police officer who was acting in the course of his duties.  The fact that irrelevant questions were posed relating to the "badness" of petitioner for having commenced preparation to file a lawsuit concerning the arrest events did nothing perceptible in causing the jury to convict.

Subclaim C of claim 10 is titled "Trial Court denied Petitioner his Sixth Amendment right to Confrontation."  Petition, p. 91.  In this subclaim, petitioner argues that the trial court allowed Officers Williams and Mayberry to testify in conclusionary form that everything they did regarding petitioner was 100% consistent with their training and 100% lawful.  Id.  Petitioner argues that the trial court did not allow his attorney to meaningfully confront Officers Williams and Mayberry with the specifics of controlling case law that would have exposed their claims as being non-meritorious and would have gutted the prosecution's case.  Id.

Petitioner cites no portion of the record in support of this claim.  Because this claim is vague and conclusory, it does not warrant habeas relief.  James v. Borg, 24 F.3d 20, 26 (9th Cir 1994) ("conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

Subclaim D of claim 10 is titled "Trial Court Denied Petitioner His Right to Explain His Intent."  Petition, p. 92.  Petitioner argues that his lawyer told the court that petitioner's defense was that the officer's were wrong, the detention and arrest were unlawful, petitioner knew they were unlawful, and that petitioner did not make a mistake.  Id.  Petitioner argues that a defendant may be examined as to the intent with which did acted.  In support of this claim, petitioner cites pages 77-80 of the transcript.

At pages 77-80 of the transcript, the court told petitioner's counsel that it was proper for her to bring out the facts of the confrontation between petitioner and the officers.  RT at 79.  The court told counsel that he did not think that petitioner's legal opinions concerning the legality of the search and detention were particularly relevant.  RT at 80.  The court told counsel

1  that he did not think they needed to worry about the issue right then, but it would require further

2  thought and argument.  RT at 80.

3          Petitioner is apparently arguing that the trial judge should have allowed him to

4  testify as to his opinion regarding the legality of the search and seizure.  Because the legality of

5  the administrative search policy was not before the jury, it would have been improper for

6  petitioner to testify regarding his legal opinion as to this issue.  For these reasons, this ruling by

7  the trial judge did not violate fundamental fairness.

8          Subclaim E of claim 10 is titled, "Trial Court Denied Petitioner His Right to

9  Meaningful Hearing."  Petition, p. 92.  This subclaim appears to contain further argument in

10  support of the claim contained in subclaim D.

11          Subclaim F of claim 10 is titled, "The Trial Court's Ruling Put Petitioner in a

12  Bind Arising From Official Government Spokespersons Issuing Conflicting Commands to

13  Petitioner's Prejudice."  Petition, p. 93.  Petitioner argues that the trial judge ruled that since

14  petitioner committed an act that is only a general intent crime, his subjective understanding of

15  things was not relevant because one does not have to have specific intent to resist, obstruct or

16  delay in order to violate Cal. Penal Code § 148.  Petition, p. 93.  Petitioner argues that this ruling

17  violated petitioner's right to present his defense because it prevented him from testifying as to

18  why he did not what he did.  Id.

19          The argument contained in subclaim F is more argument in support of petitioner's

20  claim that the trial court should have allowed him to testify as to his legal opinion regarding the

21  legality of the search.  As discussed above, this ruling was proper.  Also, a review of the

22  transcript demonstrates that petitioner was allowed to testify extensively regarding his

23  conversations with the officers which included his explanations to them of the legality of their

24  conduct.  Finally, the court also observes that Cal. Penal Code § 148 is a general intent crime.

25  In re Muhammed C., 95 Cal. App. 4th 1325, 1329 (2002).  This claim is without merit.

26  \\\\\

16

1    Subclaim G of claim 10 is titled "Petitioner Was Not Allowed to Cite Any Legal

2 Authority." Petition, p. 94. In this claim, petitioner argues that he was not permitted to cite a

3 single case to the jury. Petitioner is apparently again arguing that he should have been allowed to

4 proffer his opinion to the jury regarding the legality of the search and seizure. For the reasons

5 discussed above, this claim is without merit.

6    Subclaim H of claim 10 is titled, "The Trial Court Committed Reversible Error by

7 Twice Failing to Take Mandatory Judicial Notice of Evidence That Would Have Corroborated

8 Petitioner's Defenses and Beliefs." Petition, p. 95. This subclaim appears to be further argument

9 in support of subclaim G that the trial court would not permit petitioner to testify as to the legal

10 authority he relied on in support of his conduct. For the reasons discussed above this claim is

11 without merit.

12    Subclaim I of claim 10 is titled "Petitioner's Motion to Acquit Should Have Been

13 Granted." Petition, p. 96. This argument does not address the trial court's evidentiary rulings.

14 For that reason, this claim shall be disregarded.[2]

15    After independently reviewing the record, the court finds that the denial of

16 petitioner's claims challenging the trial court's evidentiary rulings by the California Supreme

17 Court was not an unreasonable application of clearly established Supreme Court authority.

18 Accordingly, these claims should be denied.

19    Claim 11

20    Claim 11 alleges prosecutorial misconduct. Success on a claim of prosecutorial

21 misconduct requires a showing that the conduct infected the trial with unfairness as to make the

22 resulting conviction a denial of due process. Greer v. Miller, 483 U.S. 756, 765, 107 S. Ct. 3102,

23 3109 (1987) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871

24

25    [2] In any event, because the prosecution presented evidence on which a reasonable jury could rely to find petitioner guilty, the denial of the motion to acquit at the conclusion of the
26 prosecution's case did not violate fundamental fairness.

1  (1974)).  The conduct must be examined to determine "whether, considered in the context of the

2  entire trial, that conduct appears likely to have affected the jury's discharge of its duty to judge

3  the evidence fairly."  United States v. Simtob, 901 F.2d 799, 806 (9th Cir. 1990).

4        The appropriate standard of review for a claim of prosecutorial misconduct on a

5  writ of habeas corpus is "the narrow one of due process, and not the broad exercise of

6  supervisory power."  Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471 (1986)

7  (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 642, 94 S. Ct. 1868, 1871 (1974)).

8  According to the Supreme Court, "the touchstone of due process analysis in cases of alleged

9  prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  Smith

10  v. Phillips, 455 U.S. 209, 219, 102 S. Ct. 940, 947 (1982).  Thus, the federal habeas court must

11  distinguish between "ordinary trial error of a prosecutor and that sort of egregious

12  misconduct . . . amount[ing] to a denial of constitutional due process."  Id., 102 S. Ct. at 947.

13      Improper prosecutorial argument violates rights under the federal
   constitution if it "'so infected the trial with unfairness as to make
14  the resulting conviction a denial of due process.'"  Darden v.
   Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144
15  (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94
   S.Ct. 1868, 40 L.Ed.2d 431 (1974)).  It "is not enough that the
16  prosecutors' remarks were undesirable or even universally
   condemned."  Id. (internal quotation marks omitted).

17

18  Allen v. Woodford, 395 F.3d 979, 997-998 (9th Cir. 2004).

19        Petitioner cites 14 examples of misconduct committed by the prosecutor during

20  closing argument.  First, petitioner cites the following argument as a misstatement of the law:

21      The courts have accepted that administrative searches are a well
   settled exception to the search requirement, and that's the case
22  here.  The law that the judge read you, this was an administrative
   search.  Administrative searches are lawful.  So I don't know why
23  she keeps going back trying to maybe arouse some sort of passion
   or some sort of pity for the defendant.  But it's important for you to
24  remember that the lawfulness of the search policy in this case is
   irrelevant.  It's not a jury issue.  It's not something you need to be
25  concerned with.  The courts have already decided that it was okay.

26  RT at 852.

1    The prosecutor later argued, "Today these administrative searches are okay."  RT
2  at 863.

3    Petitioner argues that the prosecutor's argument cited above misstated the law
4  because while some administrative searches are legal, there is no clear and unquestionable
5  controlling authority that what the Redding Police Department did in this case under the label
6  administrative search was legal.  Petition, p. 97.

7    The prosecutor correctly argued, and the jury was instructed, that the
8  administrative search policy was legal under the Fourth Amendment.  RT at 783.  The issue for
9  the jury to decide was whether petitioner willfully resisted Officer Mayberry's order that he
10  either submit to the search or not enter the air show.  RT at 786-787 (jury instructions).  This
11  argument did not misstate the law.

12    Petitioner argues that the following portion of the prosecutor's argument
13  constituted misconduct: "The defendant is actually being harmful and he's suing people now as a
14  result of his wild imagination.  And that's the second difference.  First of all, he's making these
15  accusations and now he's actually suing people."  Petitioner does not cite the portion of the
16  transcript where this argument is contained.  In any event, petitioner argues that this argument
17  misstated the facts because he had not filed a complaint.

18    As discussed above, petitioner had filed a notice of claim indicating his intent to
19  sue.  The court finds that the prosecutor's comment that petitioner was suing people was
20  misconduct, as such constituted irrelevant comment on petitioner's character.  However, because
21  the evidence and argument paled in comparison to the legitimate evidence, no harmful error
22  occurred.

23    Petitioner argues that the following portion of the prosecutor's argument
24  constituted misconduct:

25    He is not letting anyone look in those bags.  Why?  Isn't that weird?
    If you have nothing to hide, why is it your mission in life to just go
26    past these people as quick as you can and get into the Air Show

19

1    making very clear that they are not looking in your bags?  That in
     and of itself justifies Officer Mayberry putting his hands on him to
2    temporarily detain him.  It's not an arrest.  It's a temporary
     detention in order to investigation [sic] whether not a crime was
3    occurring.

4    RT at 805.

5           Petitioner argues that the argument quoted above constituted misconduct because

6    "only a statist could describe the peaceful exercise of a right as 'weird.'" Petition, p. 100.

7    Nothing about the argument quoted above constitutes misconduct.  This argument is legally

8    frivolous and will not be further addressed.

9           Petitioner argues that the following portion of the prosecutor's argument

10   constituted misconduct:

11   So at that point he puts his hands on him.  Was that lawful?  Was
     that choice to put his hands on the defendant lawful?  Yes, for
12   several reasons.  As we know, reasonable suspicion that this person
     either had, was going to, or was committing a crime.  It's not
13   probable cause.  It's facts that the officer would be able to
     articulate that would make a reasonable officer think the same
14   thing.

15   What do we know here?  Well, there's several reasons why he was
     justified doing that.  First of all, just the suspicious circumstances.
16   It's after 9-11.  He knows there's been a terrorist threat or what
     was perceived to be a terrorist threat towards the Redding Air
17   Show.  He sees this guy and he's dressed a little bit unusual.  He's
     carrying all these bags.  He blows right by Herb Williams who is in
18   uniform.  He is not letting anyone look in those bags. Why?

19   RT at 805.

20          Petitioner argues that the argument quoted above is misconduct because,

21   Everything about these arguments is disingenuous.  They are
     spurious red herring or bunnies this prosecutor pulled out of her hat
22   to distract jurors from stubborn little critters, facts: 1) the search
     policy is unconstitutional; 2) the officers acted unconstitutionally;
23   3) petitioner did not commit a crime; 4) everything petitioner did
     was lawful, privileged, and immune from criminal punishment;
24   and 5) she and the officers bootstrapped to leverage a conviction.

25   Petition, p. 100.

26   \\\\\

20

1        In the portion of the argument quoted above, the prosecutor properly argued why

2   Officer Williams detained petitioner.  Petitioner's challenge to this argument is legally frivolous.

3        Petitioner argues that the following portion of the prosecutor's argument

4   constituted misconduct:

5           At that point confronted with a fully-uniformed police officer, he's
            thinking I'm not having this.  I'm above the law.  In he goes.  It
6           was either pushing Scott out of the way or just trying to get past
            him and brush his shoulder against him, whatever it was.  This
7           movement made very clear that the defendant's moving.  He's
            going in.  It doesn't matter what I say.  He's tried verbal judo.
8           He's tried to talk to him.  As soon as the defendant makes that
            movement, that justifies a higher use of force.

9

10  RT at 804.

11        Petitioner cites the additional argument: "So that's one reason he was completely

12  justified putting his hands on the defendant."  RT at 806.

13        Petitioner argues that the above quoted argument constituted misconduct because

14  there was no evidence that he penetrated the air show's entry or that he brushed Mayberry's

15  shoulder.  Petition, p. 102.  Petitioner has misread the prosecutor's argument.  The prosecutor

16  argued that petitioner intended to enter the air show and made a movement indicating that he

17  intended to push past Officer Mayberry.  Petitioner's challenge to this argument is legally

18  frivolous.

19        Petitioner argues that the following portion of the prosecutor's argument

20  constituted misconduct: "Secondly, the rules was your bags got searched or you don't come in.

21  It's a private facility.  He's going in anyway on a private facility.  That's trespassing.  That's a

22  crime."  RT at 806.  Petitioner argues that this argument constituted misconduct because it

23  implied that the search policy was legitimate.  As discussed above, the administrative search

24  policy was legal.  Second, petitioner argues that the characterization of the air show as being on a

25  private facility was false.  Rather, petitioner argues that the air show was on a public municipal

26  airport.  This minor mischaracterization was not the sort of egregious misconduct amounting to a

21

1  denial of constitutional due process.

2       Petitioner also argues that use of the word "trespass" was improper because he did

3  not commit a trespass.  The prosecutor's characterization of petitioner as having attempted to

4  commit a trespass was not misconduct.

5       Petitioner argues that the following portion of the prosecutor's argument

6  constituted misconduct: "You can't put your hands on a police officer when you disagree with

7  what they are telling you and push them out of the way or bump them out of the way.  That's a

8  crime."  RT at 806-807.  Petitioner argues that this constituted misconduct because there was no

9  evidence that he touched Mayberry.  Petitioner has taken the above quoted argument out of

10  context:

11          Yet another reason, this motion that the defendant makes to get
        past him, to push him out of the way or making it very clear that if
12          he wasn't going to push him out of the way, he was going into the
        Air Show.  Officer Mayberry showed us that motion.  When
13          somebody goes to push you out of the way when you are a police
        officer, you have made it very clear that you can't go that way with
14          those bags and they try to push you out of the way, assaulting a
        police officer, you can't do that.  You can't put your hands on a
15          police officer when you disagree...

16  RT at 806.

17       The prosecutor was arguing that it looked as though petitioner were going to

18  disobey Officer Mayberry and push past him.  This argument did not constitute misconduct.

19  Petitioner also argues that he did not violate Cal. Penal Code § 148 if all he did was bump

20  Officer Mayberry.  This argument is without merit as this was an issue for the jury to decide.

21       Petitioner argues that the following portion of the prosecutor's argument

22  constituted misconduct:

23          And in this case the difference between the detention which is to
        investigate whether or not a crime has occurred and the actual
24          arrest, it happens very quickly, and the reason why is because once
        the defendant is detained when Officer Mayberry puts his hands on
25          him, he flings his elbow up as if he is going to hit Officer
        Mayberry in the face.  We know that probable cause exists when
26          facts are there that would leave a prudent or reasonable officer

1                    believing that a crime has occurred.  When you swing your arm up
in an officer's face and then proceed to struggle, that's a 148.
2                    That's what we're here for today.

3  RT at 807.

4          Petitioner's claims regarding the above quoted argument do not raise issues of

5  prosecutorial misconduct.  Instead, petitioner argues that the argument "underscores well how

6  Penal Code § 184(a)(1) was unconstitutionally applied in this case because it is vague, overly

7  broad..." Petition, p. 105.  Petitioner also argues that his conduct did not constitute a violation of

8  § 148.  The court addressed the issue of vagueness and sufficiency of the evidence already in

9  these findings and recommendations.  Accordingly, the court will not address these arguments in

10  this section addressing prosecutorial misconduct.

11         Petitioner argues that the following portion of the prosecutor's argument

12  constituted misconduct:

13                Disregard that 99.9 percent of his testimony because when the
evidence shows that a person voluntarily did that which the law
14                declares to be a crime, it is no defense that he did not know the act
was unlawful or believed it was unlawful.  It doesn't matter that he
15                sat here for several hours trying to tell you I know better, I know
better than that officer, he was acting unlawfully.  The law is
16                disregard that because it doesn't matter what he thought.

17  RT at 808.

18         Petitioner also cites the following argument:

19                Well, we know from the jury instruction that was up there it
doesn't matter what the defendant thought.  That doesn't matter.
20                We focus on the facts.  We focus on the elements, the testimony.
We use all of those things to make a determination as to these
21                elements here.  It doesn't matter what the defendant thought.

22  RT at 818.

23         Petitioner argues that the above quoted argument is "false" because the prosecutor

24  had to prove a union of criminal act and specific intent to commit the proscribed act.  Petition, p.

25  106.  Cal. Penal Code § 148(a) is a general intent crime, "proscribing only the particular act

26  (resist, delay or obstruct) without reference to an intent to do a further act or achieve a future

23

consequence." In re Muhammed C., 95 Cal. App. 4th 1325, 1329 (2002).  Petitioner's belief that

the search was illegal was no defense to his conduct.  For these reasons, the court finds that

petitioner's challenge to the argument set forth above is without merit.

        Petitioner argues that the following portion of the prosecutor's argument

constituted misconduct:

> So what does the defendant do?  Immediately he goes to RPD
> when he's released before Monday over the weekend and he wants
> an exception to the rule.  They don't release property on weekends
> because there's no custodian there.  There's no evidence person
> there.  They are not going to make an exception for the defendant
> because that's the rule.  But he goes straight there after being told
> several times to come back on Monday, and he wants his property
> back.  And because they didn't make an exception, shame on them.
> That just goes to show excessive use of force.  The point is that
> you have got a person who is not going to follow the rules.

RT at 820.

        Petitioner argues that the above quoted argument is wrong because the only one

who wanted an exception to the rules was the State, the Redding Police Department, the officers,

the prosecutor, the trial judge and the state appellate judges.  Petition, p. 106.  Petitioner's claim

that the argument quoted above constituted misconduct, as fraud by petitioner, is legally

frivolous.

        Petitioner argues that the following portion of the prosecutor's argument

constituted misconduct:

> The defendant, basically, he's an attorney and he thinks that he's
> above the law.  That's the bottom line.  He thinks that he's better
> than everyone else.  He made comments during his testimony that
> he wanted to separate himself from the rest of the Air Show
> spectators.  He's above them.  He's smarting [sic] than Deputy
> Williams.  Smarter than me.  Smarter than his attorney.  He just
> thinks because he's an attorney he can act that way.  He says that
> he doesn't want to be arrogant, but he is smarter than all these
> people and he didn't want to lose double digit IQ points during the
> scuffle.  That just shows you in his frame of mind he's above the
> law.  And we don't live in a society like that, ladies and gentlemen.
> We really don't.  Just because he's an attorney doesn't mean he can
> break the law.  If we're all accountable for our actions, if we all

24

1         have to take responsibility for the things we do, why should it be
     any different for him?

2

3         Everything about this case was reasonable except for the way the
     defendant acted.  And you can't use the constitution as a shield to

4         hide behind when it's convenient for you.  He is screaming his
     constitutional rights when really he just wanted his twisted
     interests to take precedence over the interest of everyone else.

5

6    RT at 821-822.

7              Petitioner argues that the above quoted argument constituted misconduct because

8    she made an "inflammatory 'class warfare' argument to play on most peoples' hostility toward

9    attorneys."  Petition, p. 107.  Petitioner further argues,

10        This argument it the functional equivalent of forensic vomit, of
     constitutional heresy, of illegal bubonic plague.  Only a statist

11        could make this perverse argument.  This argument manifests
     intense, venomous hostility toward the very idea of Individual

12        Rights, which is an enormous part of what the United States
     Constitution is designed to protect.

13

14   Petition, p. 107.

15             Petitioner's additional argument regarding the above quoted argument continues

16   in the same vein.  Petitioner's hyperbolic argument, much worse than that attributed to the

17   prosecutor, is legally frivolous.  Telling a jury that a lawyer is "not above the law" is neither class

18   warfare nor overtly hostile.

19             Petitioner argues that the following argument constituted misconduct: "Officer

20   Mayberry agrees that you don't put your hands on someone unless it's a last resort.  He

21   absolutely agrees and that's absolutely what he did."  RT at 812.  Petitioner also cites the

22   following argument: "He's got several options.  He chose the one that would hurt the defendant

23   the less."  RT at 814.

24             Petitioner argues that the above quoted argument constituted misconduct because

25   Officer Mayberry had other lawful options that would have satisfied the state's public safety

26   concerns.  Petition, p. 109.  The prosecutor's failure to mention the other options suggested by

1   petitioner in her closing argument does not constitute misconduct.

2   Petitioner argues that the following argument constitutes misconduct: "You have

3   the facts.  You have the law.  And most importantly, you have your common sense.  So using all

4   three of those things I will ask you to return a verdict of guilty because the defendant is not above

5   the law."  RT at 822.  Petitioner argues that this argument constituted misconduct because the

6   jury did not have all the facts and all the controlling law.  Petition, p. 110.  Petitioner argues,

7   "The truth is:  the prosecutor and the trial judge worked as a tag team to keep the jurors in the

8   dark."  Id.  Petitioner's argument regarding the above quoted argument is legally frivolous which

9   the court will not dignify with further discussion.

10   Finally, petitioner objects to the following statement by the prosecutor during her

11   closing argument: "I'm just doing my job."  RT at 860.  In the context of the entire statement,

12   this one sentence does not constitute misconduct.  While the one sentence taken by itself could

13   be suspicious for vouching, the prosecutor was responding to a defense charge in defense final

14   argument that "we all have a motive."

15   > The defense was quick to point out that we all–pointing over to the
    > prosecution table we all have a motive.  As the testimony of Mr.
16   > Mancus made very clear, I wasn't there.  *I'm just doing my job.*
    > Whoever else would assigned to prosecute this case in my position,
17   > they would be sitting in the same position.....But if the defendant
    > wants to talk about motive, let's talk about [his] motive....

18

19   RT 860.

20   This is not vouching.

21   Petitioner makes several additional prosecutorial misconduct arguments.  In

22   subclaim C he argues that the prosecutor attempted to punish him before the jury for exercising

23   his right to object by filing a Notice of Government Tort Claim, for exercising his Fourth

24   Amendment rights, and for exercising his Sixth Amendment right to counsel.  Petition, pp. 111-

25   112.  Petitioner cites no portion of the record in support of this claim.  Because this claim is

26   vague and conclusory, the court will address it no further.

In subclaim D petitioner argues that the prosecutor made conflicting arguments regarding who should decide the legality of the search.  Petitioner argues that in her opposition to his motion to suppress, the prosecutor argued that the lawfulness of the officer's actions should be decided by the trier of fact.  Petition, p. 112.  Petitioner argues that during trial, the prosecutor contradicted this argument and argued that the court should determine this matter.

Petitioner has misread the trial transcript.  During the trial, the prosecutor argued that the issue of the legality of the administrative search should not be decided by the jury.  RT at 768.  The prosecutor argued that the jury should decide whether petitioner resisted Officer Mayberry's attempt to enforce the lawful policy.  Id.  The prosecutor's argument regarding this matter was not contradictory.

In subclaim E petitioner argues that the prosecutor disingenuously told the jury that the legality of the search was not for them to decide and that she got the judge to instruct the jury in a way that resolved all or most of the issues against petitioner.  Petition, p. 113.  This argument is further argument that the jury should have decided the legality of the administrative search policy.  For the reasons discussed above, this claim is without merit.

In subclaim F, petitioner argues that the prosecutor vouched for a guilty verdict. Petition, p. 113.  Petitioner cites four pages of the transcript (RT 860, 856, 858-59) in support of this claim.  The court has reviewed these pages and finds no improper vouching.  In subclaim G petitioner argues that the prosecutor mischaracterized the law.  Petition, pp. 113-114.  Petitioner makes no specific argument in support of this claim other than this conclusory statement. Accordingly, the court will not address this argument any further.

In subclaim H, petitioner argues that the prosecutor unethically aroused the jury's passions.  Petitioner cites several pages of transcript where this misconduct allegedly occurred (RT 820-822; 864, 860-861, 805, 821, 803-806, 578-580, 598-599).  The court has reviewed these pages and does not find any actionable misconduct.

\\\\\

1    In subclaim I, petitioner argues that the prosecutor knowingly presented false

2  evidence including,

> 1) Via Williams, a consent search automatically triggers probable
> cause to detain and search; 2) Via Mayberry, everything Mayberry
> did was legal; 3) She knew that the Shasta County jail's audio-
> visual booking tape of petitioner had a built in clock which showed
> that petitioner was booked at that jail at 11:55 a.m. on May 4,
> 2002, which supported petitioner's testimony as to when he was
> arrested, and she knew that Mayberry and all prosecution witnesses
> said the Mayberry-Petitioner incident occurred at "about 1:00 p.m."
> (RT 818-819).  So desperate was Mulligan to get conviction she
> discredited the accuracy of the Shasta County Sheriff's jail's clock
> without credible evidence.

9  Petition, p. 114, n. 302.

10    Petitioner's claim that the prosecutor presented false evidence that a consent

11  search automatically triggers probable cause to detain is a legal argument.  This claim does not

12  involve the presentation of false evidence.  Petitioner's claim that the prosecution falsely

13  presented evidence that everything Mayberry did was legal is legally frivolous and will not be

14  further addressed.

15    Petitioner's argument that the prosecutor presented false evidence regarding when

16  the incident occurred is without merit because, even assuming the incident actually occurred

17  earlier than 1:00 p.m., petitioner has not demonstrated that there is a likelihood that the false

18  testimony could have affected the judgment of the jury.  Morris v. Ylst, 447 F.3d 735, 743 (9th

19  Cir. 2006) (a conviction will be reversed if the prosecution knowingly presented false evidence

20  that was material in that there is a reasonable likelihood that the false evidence could have

21  affected the judgment of the jury).

22    In subclaim J petitioner argues that the prosecution gave the jury a materially false

23  impression.  Petition, p. 114.  Other than this conclusory statement, the petition contains no

24  additional argument in support of this claim.  Because this claim is vague and conclusory, the

25  court will not address it further.

26  \\\\\

1     Subclaim K argues that the prosecution's closing argument was a plea for jurors to

2  nullify the law in favor of the prosecution.  Petition, p. 115.  This argument is not supported by

3  the record.  Because this argument is legally frivolous, it will not be further addressed.

4     Subclaim L is that the prosecutor championed an unconstitutional police search

5  policy.  Petition, p. 115.  This argument is legally frivolous and will not be addressed further.

6     Subclaim M is that the prosecutor violated Brady v. Maryland, 373 U.S. 83, 83 S.

7  Ct. 1194 (1963).  Under Brady, the prosecution has a constitutional obligation to turn material

8  exculpatory evidence over to the defendant.  Evidence is material "if there is a reasonable

9  probability that, had the evidence been disclosed to the defense, the result of the proceeding

10  would have been different."  United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375 (1985).

11     Petitioner argues that, prior to trial, the prosecutor failed to turn over evidence that

12  1) Redding Police Officer Long, prior to the start of the air show, determined that petitioner was

13  not the person who had made a suspicious call to the air show; 2) Officer Williams believed that

14  because petitioner refused to consent to the search, he had probable cause to detain petitioner and

15  search his bags; 3) Officer Mayberry's entire basis for his alleged probable cause for detaining

16  petitioner was his reliance on Long's investigation of the suspicious caller and Williams' call for

17  Mayberry to detain petitioner.  Petition, pp. 115-116.

18     The prosecution presented evidence that all persons entering the air show with

19  bags, etc. were subject to search.  The prosecution presented evidence that petitioner was

20  detained because he refused to consent to a search and acted as though he were going to enter the

21  air show without being searched.  Evidence that petitioner was not a suspicious caller was not

22  material.  Petitioner's Brady claim is without merit.

23     In subclaim N petitioner argues that the prosecutor's Brady violation impacted

24  petitioner's right to the effective assistance of counsel.  Petition, p. 117.  This claim is legally

25  frivolous.

26  \\\\\

29

1    In subclaim O petitioner argues that the prosecutor opportunistically shifted the

2    theories of conviction. Petition, pp. 117-118. Petitioner argues that during her closing argument,

3    the prosecutor argued for the first time that petitioner committed an attempted assault and was

4    guilty of being on the verge of committing a trespass. Id. This claim is legally frivolous.

5    In subclaim P petitioner argues that the prosecutor functioned in an uneven

6    handed manner. Petition, p. 118. In subclaim Q, petitioner argues that the prosecutor proved the

7    elements of an invidious prosecution. Petition, pp. 118-119. In subclaim R, petitioner argues

8    that the prosecutor's core position was an extreme deviation from controlling case law. Petition,

9    p. 119. These claims are legally frivolous.

10   After independently reviewing the record, the court finds that the denial of

11   petitioner's prosecutorial misconduct claims by the California Supreme Court was not an

12   unreasonable application of clearly established Supreme Court authority. Accordingly, these

13   claims should be denied.

14   Claim 12

15   Claim 12 alleges 28 instances of ineffective assistance of counsel. The test for

16   demonstrating ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S.

17   668, 104 S. Ct. 2052 (1984). First, a petitioner must show that, considering all the circumstances,

18   counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at

19   688, 104 S. Ct. at 2065. To this end, the petitioner must identify the acts or omissions that are

20   alleged not to have been the result of reasonable professional judgment. Id. at 690, 104 S. Ct. at

21   2066. The federal court must then determine whether in light of all the circumstances, the

22   identified acts or omissions were outside the wide range of professional competent assistance. Id.,

23   104 S. Ct. at 2066. "We strongly presume that counsel's conduct was within the wide range of

24   reasonable assistance, and that he exercised acceptable professional judgment in all significant

25   decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland at 466

26   U.S. at 689, 104 S. Ct. at 2065).

Second, a petitioner must affirmatively prove prejudice.  <u>Strickland</u>, 466 U.S. at 693, 104 S. Ct. at 2067.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id</u>. at 694, 104 S. Ct. at 2068.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  <u>Id</u>., 104 S. Ct. at 2068.

In extraordinary cases, ineffective assistance of counsel claims are evaluated based on a fundamental fairness standard.  <u>Williams v. Taylor</u> , 529 U.S. 362, 391-93, 120 S. Ct. 1495, 1512-13 (2000), (citing <u>Lockhart v. Fretwell</u>, 113 S. Ct. 838, 506 U.S. 364 (1993)).

The Supreme Court has recently emphasized the importance of giving deference to trial counsel's decisions, especially in the AEDPA context:

> In <u>Strickland</u> we said that "[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S., at 689, 104 S.Ct. 2052.  Thus, even when a court is presented with an ineffective-assistance claim not subject to § 2254(d)(1) deference, a [petitioner] must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" <u>Ibid</u>. (quoting <u>Michel v. Louisiana</u>, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

> For [petitioner] to succeed, however, he must do more than show that he would have satisfied <u>Strickland's</u> test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly.  <u>See Williams</u>, <u>supra</u>, at 411, 65 S. Ct. 363.  Rather, he must show that the [ ]Court of Appeals applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner.

<u>Bell v. Cone</u>, 535 U.S. 685, 698-699, 122 S. Ct. 1843,1852 (2002).

 In claim one, petitioner alleges,

> 1. She failed to fully investigate and prepare viable theories of defense.  She abandoned, without good cause and without any strategic or tactical advantage, meritorious defenses.  She did not make a careful investigation of the factual and legal aspects of the prosecution's case and petitioner's defenses. [Footnote omitted.]

> She failed to spend adequate time with petitioner to review the testimony.  She failed to familiarize herself with, or use, fully and sufficiently, substantial materials petitioner prepared for her.  Some of it she even refused to look at without good cause.

Petition, pp. 120-121.

Petitioner does not describe the defenses that counsel failed to investigate.  Nor does petitioner describe the materials counsel failed to review.  Petitioner also does not address the issue of prejudice.  For these reasons, the court does not find that claim 1 meets the <u>Strickland</u> threshhold.

Claim 2 alleges, "She failed to do adequate legal research to raise herself to a level of informed decision-making.  She made key decisions in an information vacuum, which cannot support a claim that her decisions were well informed, competent, 'strategic,' or 'tactical.'" Petition, p. 121.  Petitioner does not describe the legal research counsel failed to perform and nor does he address the issue of prejudice.  For these reasons, the court finds that claim 2 does not meet the <u>Strickland</u> threshhold.

Claim 3 alleges, "She did not competently develop or present a coherent theory of defense." Petition, p. 121.  Petitioner again does not describe the defense that counsel failed to present and nor does he address the issue of prejudice.  For these reasons, the court finds that claim 3 does not meet the <u>Strickland</u> threshhold.

Claim 4 alleges, "She failed to meaningfully consult with petitioner and this became evident when petitioner took the witness stand.  She called petitioner to testify without preparation." Petition, p. 121.  Petitioner does not discuss in any detail how his consultations with counsel were inadequate and nor does he address the issue of prejudice.  For these reasons, the court finds that claim 4 does not meet the <u>Strickland</u> threshhold.

Claim 5 alleges,

> She failed to give her professional duties in this case adequate attention.  While representing petitioner in this case, much of her time was spent on three matters that consumed substantial amounts

1
2
3

> of her time: 1) she worked full time in a position of high
> responsibility at one of the world's largest strawberry farms; 2) she
> was involved with preparing a defense to a serious civil lawsuit
> against this farm; and 3) she took a class in Spanish.

4  Petition, p. 121.

5      While petitioner alleges that counsel was preoccupied with other matters in her life

6  during the time she represented him, he does not address the issue of prejudice.  For this reason,

7  the court finds that claim 5 does not meet the <u>Strickland</u> threshhold.

8      Claim 6 alleges, "She failed to litigate Petitioner's Fourth Amendment defenses

9  competently, which were meritorious."  Petition, p. 121.  Other than this conclusory assertion,

10  petitioner does not describe how counsel failed to properly litigate his Fourth Amendment

11  defenses and nor does not he address the issue of prejudice.  Moreover, on appeal, the appellate

12  division of the Shasta County Superior Court found that the administrative search policy was

13  legal:

14
15
16

> Defendant's first and primary contention on appeal is that his
> detention by Officer Mayberry was unconstitutional.  In order for
> Officer Mayberry's request of the defendant to stop and display the
> contents of his luggage to be lawful, Officer Mayberry had to be
> conducting a lawful detention.

17
18
19
20
21
22
23
24

> The Redding Exchange Club had conditioned admission to its air
> show at the Redding Municipal Airport to require inspection of any
> and all large containers, ice chests, etc. being brought into the air
> show.  Defendant argues that this condition was imposed to
> generate revenue from the concessionaires by halting import of food
> and beverages.  Any profits realized by the Redding Exchange Club
> were to be divided up and distributed to a number of local
> organizations for community work.  Among those organizations
> receiving contributions in the past had been the Redding Police
> Department for various community projects.  Obviously Officer
> Mayberry was an employee of the Redding Police Department.
> Defendant argues that such a revenue generating condition would
> not support an administrative search of the general public,
> particularly by a recipient of the "profits."

25
26

> Contrary to the defendant's arguments, the record is replete with
> testimony that, at the first air show after September 11, 2001, the
> overriding theme and universal concern was terrorist attacks, and
> not the generation of revenue for non-profit community causes.  The

record is more than sufficient to sustain a finding that the administrative search was born of concern that individuals might bring weapons or bombs, not hot dogs and cola, on to the grounds of the air show.

Administrative or regulatory searches have been found appropriate in other areas of search: Airport screening searches of departing passengers, People v. Hyde (1974) 12 C.3d 158, 165; housing inspections, Camera v. Municipal Court (1967) 387 U.S. 523, 536-537; sobriety checkpoints, Ingersol v. Palmer (1987) 43 C.3d 1321, 1327.  The test for determining whether a detention or seizure is justified balances the public interest served by the seizure, the degree to which the seizure advances the public interest and the severity of the interference with individual liberty.  (Brown v. Texas (1979) 443 U.S. 47, 50-51).  California constitutional privileges are based on the same considerations, i.e. balancing the governmental interests served against the intrusiveness of the detention.  (People v. Hyde, supra, 12 Cal.3d 158, 166.  Also, concurring opinion at pp. 172-173.)

This balancing test has three factors: (1) The strength of the public interest in combating the problem at hand, (2) the extent to which the program advances interest compared to approaches based on particularized suspicion or probable cause, and (3) the severity of the interference with individual liberty.  The Redding Municipal Airport is a facility controlled by Federal Aviation Agency regulations controlling access to the facility, the screening of passengers, and the overall safety of the facility.  All areas of the airport are not open at all times to members of the general public.  On May 4, 2002, a large portion of the airport was open at controlled access points to members of the general public for the Redding Air Show.

The record reflects, again, that the overriding concern of the Redding Exchange Club and other organizations, eight months after September 11, 2001, was terrorism and its threat to the general public.  This concern meets the first requirement of the balancing test, that there be a strong public interest in combating the concern of a terrorist attack.

The record further demonstrates that a number of organizations participated in the planning of the manner in which security was to be performed.  Notice of the screening procedure was given by signage placed along the approaches to the air show and at the entry gate.  Individuals entering without packages, bags or ice chests that could contain explosive devices or other tools of terrorism were subject to no screening.  Individuals with a container of concern had a choice of either returning the container to their vehicles or opening the container to permit inspection.  The procedure did not condition the seizure and unauthorized inspection of packages by the inspectors as a condition to entering the air show.

Defendant argues that the procedures were defective, in part, as the

34

1   term "a large container" was not defined.  That argument failed as
    there is no evidence in the record that bags or containers "larger"
2   than the defendant's suitcases were admitted without inspection.
    The record is consistent in demonstrating that all bags, containers,
3   and ice chests that were of sufficient size to conceal weapons or
    explosives were searched.  Defendant's two suitcases rolling combo
4   fell well within the procedure requiring "large" containers to be
    inspected.
5
    The procedures proposed for inspection of packages as a condition to
6   admission, the advertisement of those procedures prior to the inspection
    location, the option given to individuals to enter without uninspected items
7   or permit inspection, and the evidence in the record that these procedures
    were carried out in a straight forward non-discriminatory manner are well
8   within the second and third factors of the balancing test prescribed by
    People v. Hyde, supra, 12 C.3d 158 and Ingersol v. Palmer, supra, 43 C.3d
9   1321.

10  Accordingly, satisfied [sic] that Officer Mayberry was an instrument
    of a lawful administrative search, we turn to the question of his
11  detention and ultimate arrest of the defendant.

12  Respondent's lodged document no. 2, pp.  2-4.

13          A further challenge to the administrative search challenge by petitioner's counsel

14  would have been rejected for the reasons stated by the Shasta County Superior Court above.

15          Moreover, since California law supported the administrative search, petitioner

16  would have to show that his counsel was ineffective for not pursuing a contrary federal rule.

17  Petitioner could not show a contrary federal rule.  Very close in principle to the instant situation

18  was that of United States v. Marquez, 410 F.3d 612 (9th Cir. 2005).  In this case, the defendant

19  objected to the random administrative searches conducted in accordance with airport screening

20  procedures.  This objection included a secondary search after the passenger was selected for more

21  intrusive searches.  Because the object of the search was for safety reasons, and not simply to find

22  contraband of whatever nature for criminal prosecution purposes, and because the passenger did

23  have the choice to avoid the search by deciding not to board the plane, the more intrusive

24  secondary administrative searches were appropriate.  In petitioner's case, the Superior Court

25  found that the searches of bags at the air show were performed for a proper security purpose, and

26  petitioner was offered the opportunity to enter the Air Show grounds without his bags.  The

35

similarities of petitioner's case and <u>Marquez</u> are striking.  His defense counsel would not have prevailed had federal grounds, or more emphasis on federal grounds, been raised in petitioner's defense.

Accordingly, this claim of ineffective assistance of counsel is without merit.

Claim 7 alleges,

> She never explained to the jury precisely how and why the RPD's search policy was unconstitutional, how and why the officers acted unlawfully, how and why petitioner did not commit a crime, Penal Code § 148(a)(1) is unconstitutional because it is overly broad and vague, and it was being applied to petitioner unconstitutionally.

Petition, p. 121.

Also as discussed above, Cal. Penal Code § 148 is not unconstitutionally vague.  In addition, the issue of whether the search policy violated the Fourth Amendment was not before the jury.  Petitioner also does not describe in any detail how counsel's defense that petitioner did not resist arrest was inadequate.  For this reason, the court does not find that this claim meets the <u>Strickland</u> threshhold.

Claim 8 alleges,

> She did not file a motion for change of venue, knowing that petitioner had filed a Notice of Government Tort Claim, which put petitioner at risk of the prosecution using that fact against petitioner in front of a local jury with indirect financial interest arising from that claim, and petitioner told her to file such a motion.  The state did exactly what petitioner feared: arouse the jury's passions and fears, namely, petitioner's notice of claim was an indirect threat to their interests as taxpayers.

Petition, pp. 121-122.

It is extremely unlikely that the trial court would have granted a motion for change of venue based only on the fact that the prosecution intended to present evidence that petitioner filed a Notice of Government Tort Claim.  For this reason, the court finds that petitioner has failed to meet the <u>Strickland</u> threshold as to this claim.

\\\\\

36

Claim 9 alleges,

> She did not prepare a sufficient "good cause" statement for her
> <u>Pitchess</u> motion and she did not redo that motion when it was
> denied for lack of a "good cause" statement, contrary to what she
> promised petitioner.  She mislead petitioner.

Petition, p. 122.

Petitioner does not discuss how counsel could have rewritten the motion so that it would have been granted had she refiled it.  For these reasons, the court finds that petitioner has failed to meet the <u>Strickland</u> threshold as to claim 9.

Claim 10 alleges, "She did not have her motion to suppress recorded, contrary to what petitioner instructed her to do."  Petition, p. 122.  This conclusory claim does not meet the <u>Strickland</u> threshhold.

Claim 11 alleges, "Her in limine motion that Penal Code § 148(a)(1) was unconstitutionally vague and overly broad did not cite authority, even though petitioner gave her relevant authority to cite."  Petition, p. 122.  As discussed above, Cal. Penal Code § 148 is not unconstitutionally vague.  For this reason, the court finds that this claim of ineffective assistance of counsel is without merit.

Claim 12 alleges, "Her in limine motion for the trial court to take mandatory judicial notice of the specified materials failed to specify what parts of those materials should be noticed and why, and she did not re-do that motion even though the trial court gave her leave to do so."  Petition, p. 122.  Petitioner does not describe the materials counsel asked the court to take judicial notice of and nor does he address the issue of prejudice.  For these reasons, the court finds that claim 12 does not meet the <u>Strickland</u> threshold.

Claim 13 alleges,

> When she made it clear to petitioner that she was not going to re-do
> her motions in limine, petitioner prepared a mandatory judicial
> notice, gave it to her, and ordered her to file it, which she did;
> however, after filing it, she did not pursue it, and she told the trial
> judge he did not need to consider that motion.  But for that motion,

1   which petitioner prepared, she still did not argue most of the
2   enduring Fourth Amendment core principles in that motion, plus
    Hyde's unambiguous material limitations on what the police did.

3   Petition, p. 122.

4          While petitioner argues that counsel did not argue "most" of the Fourth

5   Amendment principles, plus Hyde's limitations, he does not discuss what counsel did argue in

6   contrast to what she should have argued.  Nor does petitioner address the issue of prejudice.  For

7   these reasons, the court finds that claim 13 does not meet the Strickland threshold.

8          Claim 14 alleges,

9   Except as stated in "13" [via the motion petitioner prepared which
    she told the judge he did not need to concern himself with,] she
10  never brought to the judge's attention, the prosecutor's attention, or
    the jury's attention, Hyde's limitations on administrative searches.
11  Inexplicably, she never did this even after petitioner repeatedly told
    her about this Hyde limitation and ordered her to do so.
12

13  Petition, p. 122.

14         As discussed above, the Shasta County Superior Court on appeal found that the

15  administrative search was proper under People v. Hyde, 12 C.3d 158, 165 (1974).  Had counsel

16  challenged the legality of the search pursuant to Hyde, assuming she did not, such a challenge

17  would have been denied for the reasons set forth above in the opinion by the Superior Court.

18  Accordingly, this claim of ineffective assistance of counsel is without merit.

19         Claim 15 alleges,

20  She never submitted to the trial court a single jury instruction
    regarding the limitations that the California Supreme Court, the
21  United States Supreme Court, and the Ninth Circuit imposed on
    "administrative searches" for airline passengers. [Footnote omitted.]
22  Inexplicably, she failed to do this even though petitioner prepared
    such instructions, gave them to her, and ordered her to submit them,
23  and she promised petitioner she would submit the best ones.

24  There was no tactical or strategic advantage for her to not submit
    such instructions.  By not preparing and submitting to the trial court
25  jury instructions necessary to explain all of petitioner's theories of
    defense she withdrew key defenses from the jury considerations
26  [footnote 329]

38

[footnote 329: Among the defenses she failed to raise during trial or by way
of submitted proposed jury instructions were: 1) The refusal of a consent
search request does not give an officer the right to detain and search; 2)
Penal Code § 148(a)(1) is limited to clearly proscribed core criminal
conduct; 3) an officer may not make an arrest based on a furtive act; 4) a
search policy that is unwritten and grants searching officers unfettered
discretion is unconstitutional; 5) the administrative search exception for
airline passengers shall not be extended to others or enlarged to include
searching for banned food and beverages; 6) a warrantless seizure, search
or arrest are presumed to be unconstitutional, absent an applicable
exception to the Fourth Amendment's requirements for probable cause or a
warrant; 7) the prosecution has the burden to prove the existence of an
applicable exception to the Fourth Amendment; and 8) on May 4, 2002,
there was no known exception to the Fourth Amendment applicable to air
show patrons.]

and she made petitioner dependent on the trial court and the
prosecutor to prepare such instructions, which neither did.

Petition, pp. 122-123.

Petitioner does not specifically identify the instructions on limitations to
administrative searches that counsel failed to request.  As discussed above, the Superior Court
found that the administrative search at the air show was constitutional.  For these reasons, the
court finds that claim 15 does not meet the Strickland threshhold.

Claim 16 alleges,

In addition to failing to submit a single proposed instruction that
asserted as a defense Hyde's limitations on the administrative
search exception for airline passengers, she failed to object to the
amorphous "reasonable balance" instruction that was given.  In fact,
she worked with the prosecutor to jointly prepare that instruction
and she approved it, knowing that petitioner did not and petitioner is
an experienced attorney with a command of Fourth Amendment
jurisprudence.

Petition, p. 123.

Claim 16 alleges that counsel was ineffective for failing to object to the
"amorphous" "reasonable balance" instruction. Petition, p. 123.  Petitioner does not identify this
instruction and nor does not discuss why it was "amorphous."  For these reasons, the court finds
that claim 16 does not meet the Strickland threshhold.

39

1    Claim 17 alleges, "Except for the specified motion that petitioner prepared that she

2    filed regarding <u>Hyde</u>'s administrative search limitations, there is no written evidence that she, on

3    her own." Petition, p. 123. As discussed above, the Shasta County Superior Court found that the

4    administrative search was proper pursuant to <u>Hyde</u>. Had counsel filed motion challenging the

5    search pursuant to <u>Hyde</u>, it most likely would have been denied. Accordingly, the court finds that

6    this claim of ineffective assistance is without merit.

7    Claim 18 alleges, "By not raising and by not pressing this <u>Hyde</u> limitation, she

8    inexplicably gave away a material, viable, core defense, and there is no valid strategic reason for

9    so doing." Petition, p. 123. This claim is without merit for the same reason that claim 17 is

10   without merit.

11   Claim 19 alleges, "When she learned that the prosecutor had committed <u>Brady</u>

12   violations, she never objected, and there was no strategic or tactical advantage for failing to

13   object, and she never moved for a mistrial arising therefrom or for a continuance to investigate

14   what had been withheld and disclosed for the first time at trial." Petition, pp. 123-124.

15   As discussed above, petitioner did not demonstrate that the alleged <u>Brady</u>

16   evidence was material, i.e. there was a reasonable probability that, had the evidence been

17   disclosed to the defense, the result of the proceeding would have been different. For this reason,

18   the court finds that petitioner has failed to demonstrate prejudice with respect to the related

19   ineffective assistance of counsel claim.

20   Claim 20 alleges,

21   She materially lied to Petitioner. After she promised petitioner that
     she would submit the special, proposed jury instructions that
22   petitioner prepared and gave her that dealt with the Fourth's
     enduring principles and <u>Hyde</u>'s limitations, she mislead petitioner.
23   She told petitioner she would submit many of those instructions to
     the judge, and she did submit these instructions when she did not.
24   There was no strategic or tactical advantage for not submitting those
     proposed instructions. By lying to Petitioner, she manifested
25   inexcusable material dishonesty and she withdrew meritorious
     defenses without any valid "strategic" or "tactical" reason.

26

> Since she was petitioner's attorney of record, petitioner had to communicate with the trial court and the prosecutor through her. Since she is a licensed professional with a duty to be truthful, petitioner had a reasonable expectation that she was truthful with him, and was faithful and loyal.  When she told petitioner that she filed and served the additional jury instructions petitioner ordered her to do, he reasonably believed her.  If he did not believe her or if she had told him the truth, he would have pressed the issue in open court with the trial judge and sought to have the proposed jury instructions, filed, served, and given to the jury, and he would have sought to substitute himself in as attorney of record.
>
> Petitioner can prove that he prepared extensive prepared special jury instructions and caused them to be delivered to his attorney before the trial.

Petition, pp. 123-124.

Claim 20 is further argument regarding counsel's failure to pursue the Hyde limitations.  For the reason the court denied the claims discussed above raising this same issue, this claim is denied as well.

Claim 21 alleges,

> She failed to pursue having Correctional Officer Tim Renault testify about petitioner's hands being purple when he took the cuffs off petitioner at the jail which was evidence of Mayberry's excessive force and abusive use of too tight handcuffs.

Petition, p. 125.

The jury was instructed that if an officer uses excessive force in making or attempting to make the detention in question and that petitioner used only reasonable force to protect himself, then petitioner was not guilty of the crime charged in count 1.  RT at 789.  The handcuffs were placed on petitioner after he was arrested for violating § 148.  In other words, petitioner had already engaged in the conduct that led to his being charged with violating § 148 at the time the handcuffs were placed on him.  Whether the handcuffs were too tight was not relevant to whether petitioner committed this offense.  Therefore, evidence that Officer Mayberry may have applied the handcuffs too tightly would not have changed the outcome of the verdict.  Accordingly, this claim is without merit.

1      Claim 22 alleges,

2      She failed to object when Herb Williams said he was trained that a
       consent search request refusal automatically triggers the right to
3      detain and to search.  She also failed to explain how and why to the
       jury Williams' training was wrong and unlawful.
4

5   Petition, p. 125.

6      Petitioner does not set forth the relevance of this testimony to the facts of this case.

7   Nor does petitioner address the issue of prejudice.  For these reasons, the court finds that claim 22

8   does not meet the Strickland threshold.

9      Claim 23 alleges,

10     She failed to object when Mayberry said he was trained to always
       escalate to force, which violates Penal Code § 853.6(I), and she
11     failed to do timely, adequate legal research about § 853.6(I).  She
       made minimal and ineffective arguments about that section, and,
12     she did so, only after petitioner spotted the issue, brought it to her
       attention, and implored her to use it.
13

14  Petition, p. 125.

15     Section 853.6(I) provides,

16     Whenever any person is arrested by a peace officer for a
       misdemeanor, that person shall be released according to the
17     procedures set forth by this chapter unless one of the following is a
       reason for nonrelease, in which case the arresting officer may
18     release the person, or the arresting officer shall indicate on a form to
       be established by his or her employing law enforcement agency,
19     which of the following was a reason for the nonrelease:

20  *****

21     Petitioner does not identify the objection counsel should have made to Officer

22  Mayberry's testimony based on § 853.b(I).  Nor does petitioner specifically discuss the arguments

23  counsel failed to make pursuant to this statute.  For these reasons, the court finds that claim 23

24  does not meet the Strickland threshhold.

25  \\\\\

26  \\\\\

42

1      Claim 24 alleges,

2      She failed to renew her motions in limine, in earnest.  Even after
       petitioner prepared a renewed motion for mandatory judicial notice,
3      which included Hyde and federal cases that supported Hyde, she
       failed to familiarize herself with that motion and to press that issue
4      to overcome the trial court's rulings.

5  Petition, p. 125.

6      Claim 24 is further argument regarding counsel's failure to pursue the Hyde

7  limitations.  This claim is without merit for the same reasons the related claims above are without

8  merit.

9      Claim 25 alleges,

10     She never had any side bar discussion reported, contrary to
       petitioner's instructions.  That failure makes it impossible for
11     petitioner to present a record of those side bar discussions, which
       are often a fertile ground for meritorious issues.  She did not object
12     when the state's witnesses testified as to their opinions regarding
       what petitioner intended to do when he acted.  She allowed the
13     state's witnesses to go beyond merely describing what they saw and
       heard.  She allowed the state's witnesses to put a pejorative twist on
14     petitioner's lawful conduct, to his severe detriment.

15  Petition, pp. 125-126.

16     Petitioner does not address how counsel's failure to have side bar discussions

17  prejudiced him.  Petitioner also does not cite the portion of the record where the state's witnesses

18  testified regarding what he intended and the court will not scour the record on petitioner's behalf.

19  For these reasons, the court finds that claim 25 does not meet the Strickland threshold.

20     Claim 26 alleges,

21     When the prosecutor maligned petitioner for exercising his rights
       before the jury, she never objected, which gave the prosecutor carte
22     blanche to continue to malign petitioner, to inflame the jury against
       petitioner.
23

24  Petition, p. 126.

25     Petitioner does not cite the portion of the record where he faults counsel for not

26  objecting.  Other than generally alleging that the prosecutor was allowed to inflame the jury,

43

1   petitioner does not address the issue of prejudice. For these reasons, the court finds that claim 26

2   does not meet the <u>Strickland</u> threshold.

3             Claim 27 alleges,

4             She never objected to the prosecutor's final arguments that incited
             jurors' fears, appealed to them to render a verdict contrary to the

5             controlling law, that appealed to the jury's class prejudice.

6   Petition, p. 126.

7             Petitioner does not identify any particular portion of the prosecutor's closing

8   argument which counsel should have objected to. As discussed above, the court does not find that

9   any of the prosecutor's closing argument constituted actionable misconduct. For these reasons,

10   the court finds that claim 27 does not meet the <u>Strickland</u> threshhold.

11             Claim 28 is really summary argument in support of petitioner's ineffective

12   assistance of counsel claims. Petition, pp. 126-127. Accordingly, the court will not address claim

13   28 as a separate claim.

14             After independently reviewing the record, the court finds that the denial of

15   petitioner's ineffective assistance of counsel claims by the California Supreme Court was not

16   contrary to clearly established Supreme Court authority. Accordingly, these claims should be

17   denied.

18             <u>Claim 13</u>

19             Claim 13 alleges jury instruction error. Petition, p. 128. A challenge to jury

20   instructions does not generally state a federal constitutional claim. <u>See</u> <u>Gutierrez v. Griggs</u>, 695

21   F.2d 1195, 1197 (9th Cir. 1983); <u>see also</u> <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir.

22   1985). Habeas corpus is unavailable for alleged error in the interpretation or application of state

23   law. <u>Estelle v. McGuire</u>, 502 U.S. 62, 112 S. Ct. 475 (1981); <u>see also</u> <u>Lincoln v. Sunn</u>, 807 F.2d

24   805, 814 (9th Cir. 1987); <u>Givens v. Housewright</u>, 786 F.2d 1378, 1381 (9th Cir. 1986). The

25   standard of review for a federal habeas court "is limited to deciding whether a conviction violated

26   the Constitution, laws, or treaties of the United States (citations omitted)." <u>Estelle v. McGuire</u>,

502 U.S. at 68, 112 S. Ct. at 480.  In order for error in the state trial proceedings to reach the level of a due process violation, the error had to be one involving "fundamental fairness."  Id. at 73, 112 S. Ct. at 482.  The Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly.  Id. at 73, 112 S. Ct. at 482.

Where, as in the present case, what is at issue is the failure to give an instruction, petitioner's burden is "especially heavy" because it has been held that "[a]n omission or an incomplete instruction is less likely to be prejudicial than a misstatement of the law."  Henderson v. Kibbe, 431 U.S. 145, 155, 97 S. Ct. 1730, 1737 (1977).  Moreover, a trial judge need not instruct on a defense which would be inconsistent with petitioner's theory of the case.  Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984).  Failure to give a jury instruction under these circumstances will not amount to a due process violation.  Id.

The burden upon petitioner is greater yet in a situation where he claims that the trial court did not give an instruction sua sponte.  To the extent that petitioner rests his claim on a duty to give an instruction sua sponte under rules of state law, petitioner has stated no federal claim.  Indeed, in the failure to give a lesser included offense instruction context, the Ninth Circuit has flatly held in non-capital cases that the failure to give the instruction states no federal claim whatsoever.  James v. Reece, 546 F.2d 325, 327 (9th Cir. 1976).  Therefore, in order to violate due process, the impact on the proceeding from failure to give an instruction sua sponte must be of a very substantial magnitude.

Furthermore, the Supreme Court has recently held that there is no unreasonable application of federal law where a state appellate court decided that a jury instruction's single incorrect statement of the "imperfect self-defense" standard did not render the instruction reasonably likely to have misled the jury.  Middleton v. McNeil, 541 U.S. 433, 124 S. Ct. 1830 (2004).

In subclaim A, petitioner argues that the court did not tell the jury about the Hyde limits on the prosecution's administrative search theory.  Petition, p. 128.

> The trial court, when refusing to take judicial notice of broad
> constitutional provisions tendered by petitioner and specific case
> law that imposed legal limits on administrative searches, opined that
> there was no need to do that because the process of adjudication had
> been "refined" (RT 36) and he was the law-giver in the trial.

Petition, p. 128.

Petitioner does not identify any particular instruction the trial court refused to give

that was requested by defense counsel.  In any event, petitioner appears to be arguing that the jury

should have decided whether the administrative search policy was legal.  As discussed above, the

legality of the search policy was not before the jury.  The issue before the jury was whether

petitioner resisted Officer Mayberry in the performance of his duties.  Therefore, the trial court

committed no error in failing to instruct the jury that it was their duty to decide whether

administrative searches at the air show were legal.

In Subclaim B, petitioner argues that the trial court refused 3 proposed defense

instructions.  First, petitioner argues that the trial court refused to give CALJIC 4.43, the necessity

defense instruction:

> A person is not guilty of a crime when [he] [she] engages in an act,
> otherwise criminal, through necessity.  The defense has the burden
> of proving by a preponderance of the evidence all of the facts
> necessary to establish the elements of this defense, namely:
>
> 1.  The act charged as criminal was done to prevent a significant and
> imminent evil, namely, [a threat of bodily harm to oneself or
> another person] [or] [_____];
>
> 2.  There was no reasonable legal alternative to the commission of
> the act;
>
> 3. The reasonably forseeable harm likely to be caused by the act was
> not disproportionate to the harm avoided;
>
> 4.  The defendant entertained a good-faith belief that [his] [her] act
> was necessary to prevent a greater harm;
>
> 5. That belief was objectively reasonable under the circumstances;
> and
>
> 6. The defendant did not substantially contribute to the creation of
> the emergency.

1 | CALJIC 4.43.

2 |       Petitioner was not entitled to have CALJIC 4.43 read because there was not a

3 | scintilla of evidence to support this defense. United States v. Sanchez-Lima, 161 F.3d 545, 549

4 | (9th Cir. 1998) (holding that a defendant is entitled to a jury instruction on a defense theory if

5 | there is any foundation in the evidence, even though the evidence may be weak, insufficient,

6 | consistent inconsistent or of doubtful credibility).

7 |       Petitioner next argues that the trial court failed to give CALJIC 4.60, the

8 | entrapment defense instruction, as modified by defense counsel.  The unmodified version of

9 | CALJIC 4.60 provides,

> It is a defense to a criminal charge that the commission of the alleged criminal act, was induced by the conduct of law enforcement agents or officers [or persons acting under their direction, suggestion or control] when the conduct would likely induce a normally law-abiding person to commit the crime.
>
> To establish this defense the defendant has the burden of proving by a preponderance of the evidence that the conduct of the law enforcement agents or officers [or persons acting under their direction, suggestion or control] would likely induce a normally law-abiding person to commit the crime.

16 | CALJIC 4.60.

17 |       Petitioner does not state how counsel proposed that CALJIC 4.60 be modified.

18 | With any modification, petitioner was not entitled to have CALJIC 4.60 read because there was

19 | not a scintilla of evidence to support this defense.

20 |       Petitioner next argues that the trial court refused to give a defense instruction

21 | regarding a broad constitutional perspective of the case.  Petitioner argues, "This refusal allowed

22 | the prosecution to portray the search policy as being constitutionally legitimate and binding when

23 | it was neither."  Petition, p. 129.  Although petitioner does not identify or describe the particular

24 | instruction he faults the court for not giving in connection with this claim, it is clear that the

25 | instruction concerned the legality of the administrative search.  As discussed above, the legality of

26 | the administrative search was not before the jury as the officers were authorized to conduct the

1    search.  Accordingly, this claim of jury instruction error is without merit.

2            In subclaim C, petitioner argues that the trial court misdirected the jurors to a

3    directed verdict.  Petition, p. 130.  Petitioner first objects that the trial court declared itself the sole

4    "law giver," citing RT at 772.  At page 772, the trial court instructed the jury that it must "accept

5    and follow the law as I state it to you regardless of whether you agree with the law."  RT at 772.

6    There is nothing improper about this instruction.  Petitioner's objection to this instruction is

7    without merit.

8            Petitioner next objects to the trial court's definition of "willfully."  Petitioner

9    argues,

10           The word willfully when applied to the intent with which an act is
             done or omitted means with a purpose or willingness to commit the
11           act or to make the omission in question; it does not require any
             intent to violate the law or to injure another.  RT 774.  The trial
12           court, however, acknowledged that he believed that petitioner was
             passionately sincere that petitioner was right, but he instructed the
13           jury that petitioner's beliefs were irrelevant.

14   Petition, p. 130.

15           The trial court's instruction regarding the definition of "willfully" was correct.  RT

16   at 774.  Petitioner's objection to this instruction is without merit.

17           Petitioner next argues,

18           3.  For the crime charged, there must be a union of act and general
             criminal intent, which does not require an intent to violate the law.
19           When a person intentionally does what the law declares to be a
             crime, he acts with a general criminal intent even though he may not
20           know that his act or conduct is unlawful.  (RT 782)

21           This instruction failed to make clear that § 148(a)(1) has a limited
             specific intent component, namely a defendant cannot be found
22           guilty if the prosecutor fails to prove the defendant had the specific
             intent to commit a proscribed act.  Per this instruction and the
23           previous one, the trial court essentially gave the jury a directed
             verdict instruction regarding the element of petitioner's intent.  But,
24           when factual questions presented to the jury are complex, when the
             defense did not concede a relevant factual issue, and the trial court's
25           instructions denied the jury an opportunity to consider the issue, a
             court cannot say beyond a reasonable doubt that a challenged
26           instruction had no effect on the jury's verdict adverse to the

48

1     accused. [Footnote omitted.]

2          A trial judge in a criminal case, by a jury instruction, may not
           withdraw from the jury or prejudge the issue of a defendant's intent.
3

4  Petition, pp. 130-131.

5          In this claim, petitioner appears to be arguing that the trial court should have

6  instructed the jury as to specific intent.  As discussed above, Cal. Penal Code § 148(a) is a general

7  intent crime, "proscribing only the particular act (resist, delay or obstruct) without reference to an

8  intent to do a further act or achieve a future consequence."  In re Muhammed C., 95 Cal. App. 4th

9  1325, 1329 (2002).  For this reason, this claim is without merit.

10         Petitioner next argues that the trial court failed to instruct the jury that 1) the

11 Fourth Amendment is part of the United States Constitution; 2) petitioner did not have to obey a

12 search policy that conflicted with the Supreme Law; and 3) the search policy Officer Mayberry

13 enforced was unconstitutional or what the requirements were for a constitutional search policy.

14 Petition, p. 131.  As discussed above, the administrative search policy was legal.  Accordingly,

15 this was not an issue for the jury to decide, as argued by petitioner.  Accordingly, this claim is

16 without merit.

17         Petitioner next argues that the trial court improperly instructed the jury that an

18 officer's violation of Cal. Penal Code § 853.6(I) is not sufficient to invalidate an otherwise lawful

19 arrest.  Petitioner cites no legal authority for his claim that an arrest for violating § 148 is invalid

20 if § 853.6(I) is violated.  Accordingly, the court finds that this claim is without merit.

21         Petitioner next argues that the trial court improperly instructed the jury that,

22     Searches conducted as part of a regulatory scheme with an
       administrative purpose rather than as part of a criminal investigation
23     to obtain evidence of a crime may be valid under the Fourth
       Amendment even if not supported by a showing of probable cause
24     directed to a particular place or person.

25 RT at 782-783.

26 \\\\\

49

1        Petitioner argues that this instruction was improper because it failed to include the

2   Hyde exceptions to administrative searches.  Petitioner again argues that the jury should have

3   decided the legality of the administrative search policy.  For the reasons discussed above, this

4   claim is without merit.

5        Petitioner next argues that the trial court improperly instructed the jury that the test

6   for reasonableness of administrative searches was to balance the need for the search against the

7   invasion which the search entails.  RT at 783.  Petitioner argues that this instruction was improper

8   because it did not include the Hyde limitations to administrative searches.  Petition, pp. 133-134.

9   For the reasons discussed above, this claim is without merit.

10       Petitioner next argues that the trial court improperly instructed the jury that the

11  searches conducted at the air show were administrative searches.  Petition, p. 134, citing RT at

12  783.  This instruction was proper.  Accordingly, this claim is without merit.

13       Petitioner next argues that the trial court erred in instructing the jury as to the

14  elements of § 148.  Petition, p. 134.  In particular, petitioner argues that the trial court failed to

15  instruct that "when no other punishment is prescribed" is a limiting element.  Petition, p. 134.

16  Petitioner further argues that the trial court failed to instruct that "'other punishment' was

17  prescribed for petitioner's alleged 'as if' arm movement which Mayberry characterized as 'furtive'

18  and an 'attempted assault.'" Petition, p. 134.  Petitioner argues that the jury did not find that there

19  was no other punishment prescribed for what he did.  Petition, p. 135.

20       The court does not understand the legal grounds for subclaim 10. The court has

21  reviewed the two cases cited by petitioner in support of this claim in footnote 359, i.e. People v.

22  Figueroa, 41 Cal.3d 714 (1986) and People v. Garcia, 36 Cal.3d 539 (1984), and finds no support

23  for his claims in these cases.  For these reasons, this claim is without merit.

24       Petitioner also argues that the trial court did not instruct the jury that § 148(a) is

25  limited to clearly proscribed core criminal conduct and what Mayberry described that petitioner

26  did is not core criminal conduct.  Petition, p. 135.  This claim is also not supported by any valid

legal authority.  Accordingly, the court finds that this claim is without merit.

Petitioner next argues that the trial court improperly instructed the jury that intentionally handcuffing a suspect too tightly may constitute excessive force.  Petition, p. 135, citing RT at 789.  Petitioner argues that handcuffing a suspect too tightly is, by definition, excessive force.  Petition, p. 135.

As discussed above, the jury was instructed that if an officer uses excessive force in making or attempting to make the detention in question and that petitioner used only reasonable force to protect himself, then petitioner was not guilty of the crime charged in count 1.  RT at 789. The handcuffs were placed on petitioner after he was arrested for violating § 148.  In other words, petitioner had already engaged in the conduct that led to his being charged with violating § 148 at the time the handcuffs were placed on him.  Whether the handcuffs were too tight was not relevant to whether petitioner committed this offense.  Therefore, any error in this instruction did not violate fundamental fairness.  Accordingly, this claim is without merit.

In subclaims D and E, petitioner argues that the trial court failed to sua sponte read the following instructions to the jury:

> 1.  The Fourth Amendment to the U.S. Constitution is the Supreme Law of the land.

> 2.  Petitioner is a licensed member of the State Bar, has a law-imposed duty per Bus. & Prof. Code § 6068(a) to support and to defend the U.S. Constitution against all enemies, foreign and domestic.

> 3.  Petitioner's sworn oath and duty as a licensed attorney to support and to defend the U.S. Constitution by peacefully asserting Fourth Amendment rights is entitled to respect and is equal to the sworn peace officers' duty or the prosecutor's duty.  Petitioner had a duty to disobey, peacefully, an unconstitutional search policy.

> 4.  A person who did not manifest clearly proscribed core criminal conduct cannot violate Penal Code § 148(a)(1).

> 5.  A person who peacefully asserts a Constitutional right, without a manifestation of clearly proscribed core criminal conduct, did not violate Penal Code § 148(a)(1).

6.  The burden was on the prosecutor to establish a well recognized applicable exception to the Fourth Amendment.

7.  The Fourth Amendment to the United States Constitution cannot be manipulated out of existence, suspended or bypassed by a Redding Police Department search policy without a benefit of a warrant.

8.  All administrative searches are subject to the Fourth Amendment's requirement of reasonableness and an administrative warrant, and any policy that is not reasonable is not binding against petitioner.

9.  The prosecution has the burden of proof to establish a judicially recognized administrative search exception to the Fourth Amendment that was specifically applicable to air show patrons.

10.  An officer's or a prosecutor's reliance on a generic, administrative search rationale as an exception to the Fourth Amendment to justify a search, is constitutionally infirmed. Officers who enforce a constitutionally informed search policy do not discharge a lawful duty.

11.  For an administrative search policy to be Constitutionally legitimate, it must comply with these minimal requirements: It must be reduced to a formal writing; it must be reasonable; it must be judicially approved or there must be an adequate substitute for the lack of a warrant; it must strip a searching official of unfettered discretion; the Redding Police Department needed to manifest at the air show's entry gate a major "show of force" law enforcement presence [namely, many marked law enforcement vehicles, many uniformed officers, and flashing lights;] this policy must be advertised in advance; and, if signage is a factor, all signage must comply with the Penal Code's requirements, which must be communicated to the jury.  The jury, however, was not instructed as to any of this.

12.  A police department cannot constitutionally bypass the judiciary, usurp the judiciary's function, and attempt to do a de facto revision of the Fourth Amendment, without complying with Article V of the U.S. Constitution, and enforce its de facto "legislation by cop" search policy upon peaceful, law-abiding citizens, and arrest and punish any citizen who peacefully protests in good faith an illegal search policy.

13.  The "administrative pre-boarding search of ticketed, scheduled, commercial, airline passengers inside an airline passenger terminal" exception to the Fourth Amendment cannot be extended 2,000 feet and enforced against air show patrons.

14.  On May 2, 2002, there was no administrative search of air show

patrons exception to the Fourth Amendment.

15.  Searching for food or beverages to help private air show concessionaires increase their sales does not qualify as reasonable suspicion to detain air show patrons or probable cause to search their containers.

16.  Since the Fourth Amendment is part of the Supreme Law of the Land and all laws and policies that conflict with the Supreme Law are null and void and not binding on anyone, petitioner did not have a duty to submit to the Redding Police Department's search policy because it was unconstitutional.

17.  Williams' training and understanding of the law was incorrect as a matter of law.

18.  A consent search request refusal does not give a sworn peace officer Constitutionally legitimate grounds to detain or search.

19.  Williams, as a matter of law, did not have a Constitutionally legitimate basis to detain petitioner, to search petitioner's camera bags, or to call for back-up to detain petitioner.

20.  Mayberry, as a matter of law, was charged with knowing what Williams' knew about petitioner and nothing that Williams knew or did not know about petitioner added anything to Mayberry's reasonable suspicion or probable cause calculus.

21.  Mayberry, as a matter of law, was charged with knowing that Officer Long had concluded his investigation of the "suspicious caller" before the air show started, and, as a result, Mayberry could not rely upon any information from Long as probable cause calculus relative to petitioner.

22. What furtive/gesture/movement is.

23.  Sworn peace officers and the prosecution may not exploit their violation of the Fourth Amendment.

24.  A person's furtive movement, bladed position, agitated state, or refusal to submit to a search, or a combination of same, are not sufficient for a seizure, search, or arrest.

25.  On May 4, 2002, "when no other punishment is prescribed" was Penal Code § 148(a)(1) element that the prosecution had to prove.

26.  On May 4, 2002, there was "other punishment prescribed" for an attempted assault against a peace officer and a trespass.

27.  What are the elements for an attempted assault and a trespass.

28. If the jury determined petitioner committed an attempted assault or a trespass or both before Mayberry arrested petitioner, petitioner could not be guilty of a Penal Code § 148(a)(1) violation.

29. Since Mayberry admitted petitioner satisfied cite and release requirements, petitioner was entitled to such an arrest, and an officer who makes a custodial arrest instead of a cite and release arrest exceeds his lawful powers, which makes the arrest unlawful.

Petition, pp. 136-139.

Many of the instructions set forth above which petitioner claims the trial should have read sua sponte concern the legality of the administrative search policy. As discussed above, this issue was not for the jury to decide. Accordingly, the trial court did not err in sua sponte giving these instructions. The court does not find that the trial court's failure to sua sponte read the other instructions violated fundamental fairness. Accordingly, this claim should be denied.

In subclaim F, petitioner argues that the trial court's instructions had a strong pro-prosecution slant. Petition, p. 139. Petitioner cites no particular instructions in support of this claim. Accordingly, this claim is without merit.

In subclaim G, petitioner argues that the trial court unconstitutionally construed the law oppressively against petitioner and did not screen out invalid theories of conviction. Petition, p. 140. This subclaim is further argument in support of petitioner's claims challenging specific jury instructions discussed above.

In subclaim H, petitioner argues that the trial court did not maintain absolute impartiality in its instructions to the jury. Petition, p. 141. This subclaim is further argument in support of petitioner's claims challenging specific jury instructions set forth above.

In subclaim I, petitioner argues that the trial court improperly resolved mix law issues in favor of the prosecution and took them away from the jury. Petition, p. 141. In particular, petitioner argues the jury should have decided the true nature and legality of the search policy and whether petitioner's intent to "support constitutionalism defeated the 'bad purposed' component of 'willfully.'" Petition, p. 141 n. 376. These arguments have been addressed and

54

1    rejected above.

2           Subclaim J is petitioner's conclusion to his claims alleging jury instruction error.

3    Petition, pp. 141-142.  Accordingly, the court will not separately address this claim.

4           After independently reviewing the record, the court finds that the denial of

5    petitioner's claims alleging jury instruction error by the California Supreme Court was not an

6    unreasonable application of clearly established Supreme Court authority.  Accordingly, these

7    claims should be denied.

8           Claim 14

9           Claim 14 contains additional claims challenging the prosecution's closing

10   argument.  Petition, pp. 142-143.  Petitioner argues that during closing argument the prosecutor

11   "repeatedly, deliberately mislead the jury on every key issue, lied and cheated."  Petition, p. 142.

12   Petitioner cites the following categories of arguments made by the prosecutor which mislead the

13   jury: the legality of the search policy, legality of the detention, legality of the seizure, the

14   constitutionality of the officers' actions, ad hominem attacks, jury nullification.  Petition, pp. 142-

15   143.

16          Petitioner cites no pages of the closing argument where the prosecutor made the

17   offending remarks in the categories set forth above.  Accordingly, the court finds that this claim of

18   prosecutorial misconduct is conclusory and not well supported.

19          After independently reviewing the record, the court finds that the denial of this

20   claim by the California Supreme Court was not an unreasonable application of clearly established

21   Supreme Court authority.  Accordingly, this claim should be denied.

22          Claim 15

23          Claim 15 alleges that the verdict is based on invalid theories.  Petition, p. 143.  In

24   particular petitioner argues,

25              There is no way of knowing if the jury found Petitioner guilty
            because he violated Penal Code § 148(a)(1) based on the
26          "administrative search exception" theory, the "probable cause"

1  theory, the "assault" theory, the "implied consent" theory, or the
2  "trespass" theory.  The jury's verdict in this case was a general one.
   As such, there is no way to determine which theory of conviction
3  the jury accepted to convict petitioner.

4  Petition, pp. 143-144.

5      Petitioner argues that when a case is submitted to the jury on alternative legal

6  theories, the unconstitutionality of any of the theories requires that the conviction be set aside.

7  See Sandstrom v. Montana, 442 U.S. 510, 526, 99 S. Ct. 2450 (1979).

8      Petitioner's case was not submitted to the jury on alternative legal theories.  For

9  this reason, this claim is without merit.  After independently reviewing the record, the court finds

10  that the denial of this claim by the California Supreme Court was not an unreasonable application

11  of clearly established Supreme Court authority.  Accordingly, this claim should be denied.

12          Claims 16, 17 and 18

13      Claim 16 alleges that the evidence does not point unerringly to guilt.  Petition, p.

14  14.  Claim 17 alleges insufficient evidence to support the conviction.  Petition, p. 145.  Claim 18

15  alleges that no rational trier of fact, properly instructed, could find guilt beyond a reasonable

16  doubt.  Petition, p. 146.

17      The court above addressed petitioner's claim 3 which it construed to state a claim

18  for insufficient evidence.  Because claims 16, 17 and 18 are restatements of claim 3, the court will

19  not address them.

20          Claim 19

21      Claim 19 alleges that the prosecution tried to coerce petitioner into forfeiting his

22  rights and punishing him for refusing to do so.  Petition, p. 146.  In particular, petitioner argues

23  that the prosecutor told petitioner's counsel that if he plead guilty, she would only request that a

24  fine be imposed as punishment.  Id.  After petitioner was found guilty by the jury, the prosecutor

25  asked the judge to sentence petitioner to ten days of incarceration.  Id.  Petitioner argues that by

26  asking that petitioner receive a ten day sentence, the prosecutor sought to punish him for

1  exercising his right to a jury trial.

2         The court construes claim 19 to be a claim for prosecutorial misconduct.  The

3  maximum sentence petitioner could have received for violating § 148 was one year.  Cal. Penal

4  Code § 148.  Petitioner cites no established Supreme Court authority that asking for punishment

5  in excess of what was rejected in a plea bargain violates any rights.  The court does not find that

6  the prosecutor violated petitioner's right to due process when she asked the trial to sentence

7  petitioner to ten days following his conviction.

8         After independently reviewing the record, the court finds that the denial of this

9  claim by the California Supreme Court was not an unreasonable application of clearly established

10  Supreme Court authority.  Accordingly, this claim should be denied.

11                 Claim 20

12         Claim 20 alleges bias by the trial judge.  Petition, p. 147.  The Due Process Clause

13  guarantees a criminal defendant the right to a fair and impartial judge.  In re Murchison, 349 U.S.

14  133, 136, 75 S.Ct. 623 (1996). To succeed on a judicial bias claim, however, a petitioner must

15  "overcome a presumption of honesty and integrity in those serving as adjudicators."  Withrow v.

16  Larkin, 421 U.S. 35, 47, 95 S. Ct. 1456 (75).  "The inquiry must be not only whether there was

17  actual bias on [the judge's] part, but also whether there was such a likelihood of bias or an

18  appearance of bias that the judge was unable to hold the balance between vindicating the interests

19  of the court and the interests of the accused."  Taylor v. Hayes, 418 U.S. 488, 501, 94 S. Ct. 2697

20  (1974).

21         Petitioner first argues that the trial judge demonstrated bias when he denied

22  petitioner's motion to acquit made at the conclusion of the prosecution's case.  Petition, p. 149.  In

23  particular, petitioner argues that the trial judge should have granted the motion to acquit on

24  grounds that his detention and arrest violated the Fourth Amendment.  Petition, pp. 156-164.  As

25  discussed above, the administrative search policy was not unconstitutional.  Moreover, as

26  discussed above, there was sufficient evidence to support the jury's verdict that petitioner violated

1    Cal. Penal Code § 148.  The trial judge's decision to deny the motion to acquit did not

2    demonstrate unconstitutional bias.

3              Petitioner next argues that the trial judge demonstrated impermissible bias when he

4    imposed his sentence.  Petition, p. 164.  Petitioner cites various comments made by the trial judge

5    as demonstrating bias against him.  Petition, pp. 164-172.  Petitioner was sentenced to ten days in

6    jail, placed on probation for three years and fined $370.  RT at 877-878.  The trial judge could

7    have imposed a maximum sentence of one year in jail and a fine of $1000.  Cal. Penal Code §

8    148(a)(1).  Because petitioner's punishment was considerably less than the maximum that could

9    have been imposed, the court does not find that the trial judge demonstrated bias against petitioner

10   during sentencing.

11             Petitioner next argues that the trial judge was biased against him because he was

12   aware that petitioner had filed a notice of claim.  Petition, p. 172.  Petitioner argues that the trial

13   judge, as a government employee must have known that he had an interest in the outcome of

14   petitioner's trial once he became aware of petitioner's notice of claim.  This claim of judicial bias

15   is legally frivolous and will not be further addressed.

16             After independently reviewing the record, the court finds that the denial of this

17   claim by the California Supreme Court was not an unreasonable application of clearly established

18   Supreme Court authority.  Accordingly, this claim should be denied.

19             <u>Claim 21</u>

20             Claim 21 alleges that the decision by the appellate division of the state superior

21   court which affirmed petitioner's conviction was contrary to Supreme Court authority.  Petition, p.

22   190.  In this claim, petitioner challenges the Superior Court's decision that his detention by

23   Officer Mayberry was not unconstitutional.  In essence, petitioner is trying to again raise his claim

24   that the administrative search policy violated the Fourth Amendment.  As discussed above,

25   petitioner may not raise a Fourth Amendment claim in this action.  Because this claim is legally

26   frivolous, it will not be further addressed.

1          Claim 22

2          Claim 22 alleges that the state court violated the prohibition against ex post facto

3  laws.  Petition, p. 203.  The Ex Post Facto Clause of the constitution is a limitation on legislative

4  power that forbids passage and application of laws that retroactively either alter the definition of

5  crimes or increase the punishment for criminal acts.  Garner v. Jones, 529 U.S. 244, 250, 120 S.

6  Ct. 1362 (2000).

7          Petitioner appears to argue that the state court's "construction" of Cal. Penal Code

8  § 148 violated clearly established Supreme Court authority regarding the Fourth Amendment.

9  Petitioner's claim alleging violation of the Ex Post Facto Clause fails because he is not

10 challenging a law passed by the legislature.  The Ex Post Facto Clause does not, of its own force,

11 apply to interpretation of laws by courts.  United States v. Ricardo, 78 F.3d 1411, 1416 (n. 10)

12 (9th Cir. 1996).[3]

13

14          [3]  Perhaps petitioner meant to refer to the Bouie doctrine:
           An unforeseeable judicial enlargement of a criminal statute, applied retroactively,
15         violates the federal due process right to fair warning of what constitutes criminal
           conduct.  See Bouie v. City of Columbia, 378 U.S. 347, 353, 84 S.Ct. 1697, 12
16         L.Ed.2d 894 (1964); see also Rogers v. Tennessee, 532 U.S. 451, 459, 121 S.Ct.
           1693, 149 L.Ed.2d 697 (2001) (Bouie articulated a "basic and general principle of
17         fair warning"); LaGrand v. Stewart, 133 F.3d 1253, 1260 (9th Cir.1998) ("[T]he
           Due Process Clause ... protects criminal defendants against novel developments in
18         judicial doctrine.").  A judicial construction of a statute may violate due process if
           the defendant was "unfairly surprised in a way that affected his legal defense."
19         Darnell v. Swinney, 823 F.2d 299, 301(9th Cir.1987). The "crucial test" is
           "whether the construction actually given the statute was foreseeable." McSherry v.
20         Block, 880 F.2d 1049, 1053 (9th Cir.1989) (citation omitted); see also Oxborrow
           v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.1989) ("An unforeseeable, albeit
21         legitimate, construction of a state law by the courts may not be retroactively
           applied to a defendant.").  A new judicial interpretation of a special circumstance
22         provision can be challenged under Bouie because "[s]pecial circumstances that
           make a criminal defendant eligible for the death penalty operate as 'the functional
23         equivalent of an element of a greater offense.' " Webster v. Woodford, 369 F.3d
           1062, 1068 (9th Cir.2004) (as amended) (quoting Ring v. Arizona, 536 U.S. 584,
24         609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)).
   Clark v. Brown, 442 F.3d 708, 721 (9th Cir. 2006).
25         However, petitioner does not cite to a novel construction in his case, but rather that he
   was "surprised" by the previous expositions of the statute by the state courts.  His theory is an
26 oxymoron and meritless.

                                                59

1    After independently reviewing the record, the court finds that the denial of this

2 claim by the California Supreme Court was not an unreasonable application of clearly established

3 Supreme Court authority.  Accordingly, this claim should be denied.

4    Claim 24

5    Claim 24 alleges cumulative errors created a miscarriage of justice.  Petition, p.

6 207.  Because the court finds that petitioner is not entitled to habeas relief as to any of the claims

7 raised in this action, petitioner's claim alleging cumulative errors is without merit.

8    After independently reviewing the record, the court finds that the denial of this

9 claim by the California Supreme Court was not an unreasonable application of clearly established

10 Supreme Court authority.  Accordingly, this claim should be denied.

11    Frivolous Claims

12    The petition contains several claims which, on their face, are legally frivolous and

13 supported by no authority, let alone clearly established Supreme Court authority.  28 U.S.C. §

14 2254(d)(1):

15    Claim 5:  Reserve Sheriff's Deputy Williams was trained to violated citizens'

16 rights contrary to case precedents.  Petition, p. 67.

17    Claim 6:  Redding Police Officer Mayberry was trained to violate citizens' rights

18 contrary to the California legislature's commands.  Petition, p. 68.

19    Claim 23:  California courts have indefensibly sanctioned official lawlessness.

20 Petition, p. 207.

21    Claim 25:  Petitioner was denied due process.  Petition, p. 208.

22    Claim 26:  Petitioner alleges that state agents played a material role in the violation

23 of his right to due process.  Petition, p. 208.

24    Claim 27:  Shasta County has engineered a de facto secession from the union and

25 laid a trap for the unwary.  Petition, p. 209.

26 \\\\\

1    Claim 28:  The state unethically opposed petitioner's efforts for post-conviction

2  relief.  Petition, p. 210.

3    Claim 29:  The state has the burden to prove that it did not benefit from the

4  constitutional errors it created.  Petition, p. 210.

5    Claim 30:  The state has the burden to prove that it prosecuted petitioner

6  evenhandedly.  Petition, p. 210.

7    Claim 31:  The appeal page limit restrictions violated petitioner's First

8  Amendment right to petition the government.  Petition, p. 211.

9    Claim 32:  The Third Appellate District Court's without requiring a reply on the

10  merits violated his First Amendment rights.  Petition, p. 211.

11    Claim 33:  The California Supreme Court's denial of petitioner's habeas corpus

12  petition without requiring a reply on the merits violated his First Amendment rights.  Petition, p.

13  212.

14    Claim 34:  Federal de novo review is necessary to unify precedent, stabilize rules

15  of law, and to provide citizens, courts and officers a defined set of rules.  Petition, p. 213.

16    Claim 35:  The state adjudication reduced petitioner's appeal to a meaningless

17  ritual and indefensibly violated his right to due process.  Petition, p. 213.

18    After independently reviewing the record, the court finds that the denial of the

19  claims listed above by the California Supreme court was not an unreasonable application of

20  clearly established Supreme Court authority.  Accordingly, these claims should be denied.

21    Accordingly, IT IS HEREBY ORDERED:

22    The petition herein is correctly characterized as a spite petition, i.e., one that raises

23  a multitude of claims, the vast bulk of which are frivolous, and seemingly filed for the purpose of

24  simply tweaking the judicial system as a whole which had the temerity to prosecute him.  As a

25  practicing attorney, petitioner should know better.  The court finds that Fed. R. Civ. P. 11 applies

26  to such habeas petitions through Fed. R. Civ. P. 81(a)(2).

1    Petitioner shall show cause by filing a response in this court no later than May 11,

2    2007, why sanctions in the amount of $2,500.00 should not be entered against him.

3    IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

4    habeas corpus be denied.

5    These findings and recommendations are submitted to the United States District

6    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

7    days after being served with these findings and recommendations, any party may file written

8    objections with the court and serve a copy on all parties.  Such a document should be captioned

9    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

10   shall be served and filed within ten days after service of the objections.  The parties are advised

11   that failure to file objections within the specified time may waive the right to appeal the District

12   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13   DATED:   4/20/07

14                                                    /s/ Gregory G. Hollows

15                                                    _____
                                                     UNITED STATES MAGISTRATE JUDGE

16
     mancus.157
17

18

19

20

21

22

23

24

25

26